No. 121,092

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAMEON V. BAUMGARNER,
*Appellant*.

SYLLABUS BY THE COURT

1.

In considering a challenge to the sufficiency of the evidence to support a criminal conviction, an appellate court views the evidence in the light most favorable to the State as the prevailing party and asks whether rational jurors could have found the defendant guilty beyond a reasonable doubt.

2.

Principles of statutory review are stated and applied to K.S.A. 2019 Supp. 21-6301(a)(13) defining criminal use of a weapon to include possession of firearms by persons subject to involuntary commitment for mental illness.

3.

To convict for criminal use of a weapon under K.S.A. 2019 Supp. 21-6301(a)(13), the State must prove beyond a reasonable doubt that a defendant has or had a mental illness that would permit his or her involuntary commitment under the Care and Treatment Act for Mentally Ill Persons, K.S.A. 59-2945 et seq.

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed January 22, 2021. Conviction reversed and sentence vacated.

1

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kerwin L. Spencer*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

ATCHESON, J.: The Kansas Legislature has criminalized the possession of a firearm by a person "who is or has been . . . subject to involuntary commitment" because of mental illness. K.S.A. 2019 Supp. 21-6301(a)(13). This case requires us to determine what the State must prove to establish the element of the crime pertaining to mental status. We conclude conviction demands proof beyond a reasonable doubt that a defendant has or had a mental illness that would permit his or her involuntary commitment.

During a jury trial in Sumner County District Court in April 2018, the only evidence the State offered to prove Defendant Dameon V. Baumgarner's mental illness as an element of a charge for unlawfully possessing a firearm in violation of K.S.A. 2017 Supp. 21-6301(a)(13) was an order from a civil commitment proceeding two years earlier. In that civil proceeding, the district court found by clear and convincing evidence that Baumgarner was a mentally ill person subject to involuntary commitment. Because the clear and convincing standard for adjudication in a commitment proceeding is less rigorous than proof beyond a reasonable doubt required for a criminal conviction, the State did not submit sufficient evidence to prove an essential element of the criminal charge against Baumgarner. We, therefore, reverse Baumgarner's felony conviction for violating K.S.A. 2017 Supp. 21-6301(a)(13), vacate his sentence, and enter a judgment of acquittal.

2

Given the comparatively narrow statutory issue on which we decide this case, the salient facts are few.

In 2015, the State filed a civil action in the district court to have Baumgarner adjudicated a mentally ill person who could then be involuntarily committed for treatment, as provided in the Care and Treatment Act for Mentally Ill Persons, K.S.A. 59-2945 et seq. The circumstances prompting that action are not readily apparent from the record in this criminal prosecution.

A proceeding under the Care and Treatment Act may be initiated with both a verified petition stating facts the petitioner believes show the subject to be mentally ill and in need of involuntary commitment and a signed certificate from a mental health professional that the subject "is likely" a mentally ill person subject to involuntary commitment. K.S.A. 59-2957. The subject may request a trial to a jury or the district court at which the petitioner must prove by clear and convincing evidence the subject meets the statutory definition of a mentally ill person subject to involuntary commitment. K.S.A. 59-2965 (right to trial); K.S.A. 2019 Supp. 59-2966(a) (burden of proof at trial). Following a bench trial in September 2015, the district court entered an order finding by clear and convincing evidence that Baumgarner was then a mentally ill person subject to involuntary commitment for care and treatment. As permitted under the Care and Treatment Act, the district court ordered Baumgarner to participate in outpatient treatment through a community based mental health service rather than committing him for inpatient care. See K.S.A. 2019 Supp. 59-2967(a) (outpatient treatment as authorized alternative to inpatient commitment).

As we have indicated, K.S.A. 2019 Supp. 21-6301(a)(13) proscribes "possessing any firearm by a person who is or has been a mentally ill person subject to involuntary

3

commitment for care and treatment" as a form of "criminal use of weapons" designated a severity level 8 nonperson felony. In 2017, law enforcement officers received information that Baumgarner had a rifle. At the time, Baumgarner was living in his father's home in Wellington. Investigators determined Baumgarner's father kept a rifle in the closet in his bedroom, and other evidence suggested Baumgarner owned and had a possessory interest in the gun. They seized the rifle because it apparently had been stolen before coming into the Baumgarners' possession.

The State ultimately charged Baumgarner with one count of violating K.S.A. 2017 Supp. 21-6301(a)(13) for possession of the rifle and one count of interference with a law enforcement officer, a felony violation of K.S.A. 2017 Supp. 21-5904, for making ostensibly misleading statements to investigators about who in the family acquired the rifle. After several delays, a jury heard the case in April 2018.

The morning of trial, the prosecutor asked the district court to take judicial notice of and admit as evidence numerous filings from the 2015 proceeding against Baumgarner under the Care and Treatment Act. Citing the late request, the district court limited the State to introducing the order adjudicating Baumgarner to be a mentally ill person. The prosecutor offered the order, and the district court duly admitted it without objection from Baumgarner. The State presented no other evidence regarding Baumgarner's mental health. Various witnesses testified to the physical whereabouts of the rifle and some of Baumgarner's statements about the gun. Given our resolution of the appeal, we do not delve into the evidence regarding possession of the rifle. Baumgarner did not testify in his own defense and offered no other evidence. At the close of the evidence, the district court dismissed the unlawful interference charge, and it has no bearing on this appeal.

The jurors convicted Baumgarner of unlawful use of a weapon for possessing the rifle—the only charge presented to them. The district court later sentenced Baumgarner

to serve 10 months in prison and placed him on probation for 18 months, reflecting a standard guidelines sentence based on his criminal history. Baumgarner has appealed.

LEGAL ANALYSIS

On appeal, Baumgarner challenges the sufficiency of the evidence to support the two key elements of the possession of a firearm charge:  (1) his mental health status; and (2) his control over the rifle. As to the first, Baumgarner's opening brief focused on ostensible inconsistencies in the 2015 order of adjudication. Those are more imagined than real. During oral argument, the lawyer representing Baumgarner also asserted that the order of adjudication, as the only evidence bearing on the mental health element, was inadequate because the findings had been proved by clear and convincing evidence rather than beyond a reasonable doubt.

After oral argument, we directed the parties to submit supplemental briefs on the mental health element and what K.S.A. 2019 Supp. 21-6301(a)(13) specifically criminalizes. They have done so, and those supplemental briefs largely guide our resolution of this appeal.

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 845; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). Concomitantly, however, the State must present evidence that, if believed, would prove each element of the charged crime beyond a reasonable doubt. See *In re Winship*, 397

5

U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *State v. Dobbs*, 297 Kan. 1225, 1238, 308 P.3d 1258 (2013) (recognizing "constitutional requirement that the State prove every element of the crime beyond a reasonable doubt").

The sufficiency of the evidence, therefore, has to be measured against what the State must prove to convict. We, thus, face a predicate issue of statutory construction in deciding Baumgarner's sufficiency challenge. As we have outlined, the statutory language proscribes possession of a firearm "by a person who is or has been a mentally ill person subject to involuntary commitment for care and treatment." K.S.A. 2019 Supp. 21-6301(a)(13). In our request to the parties for supplemental briefing, we asked them to tell us what that part of the statute means—a question of law over which we exercise plenary review. See *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014) (interpretation of statute entails question of law given unlimited appellate review).

The State submits K.S.A. 2019 Supp. 21-6301(a)(13) requires proof that the criminal defendant has been adjudicated a mentally ill person subject to involuntary commitment. In other words, the element of the crime is the fact of adjudication as a mentally ill person. Baumgarner, not surprisingly, disagrees and says the element entails presently having or having had in the past a mental illness of the kind that would permit involuntary commitment under the Care and Treatment Act. That is, the State must prove the defendant's status as having or having had such a mental illness, rendering an adjudication under the Care and Treatment Act effectively immaterial.

We necessarily filter those responses through well-accepted principles of statutory review. When reviewing a statute, an appellate court must, as a first priority, strive to honor the legislative intent and purpose. *In re Marriage of Traster*, 301 Kan. 88, 98, 339

6

P.3d 778 (2014). The court should look to the words of the statute to discern that intent and purpose. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725, 317 P.3d 70 (2014). Absent some specialized statutory definition, the words of a statute typically should be given their ordinary meaning. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). And dictionaries (not surprisingly) supply those meanings. 306 Kan. at 851. Consistent with the statutory language, criminal statutes should be construed strictly against the State and in favor of the accused. *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012); *State v. Bannon*, 55 Kan. App. 2d 259, 265, 411 P.3d 1236 (2018).

A reviewing appellate court must take care to avoid adding something to a statute or negating something already there. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007); *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006) (statute should not be read to add language not found there). We do not have the prerogative to recraft a statute to suit our view of tidy drafting or good public policy. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016) ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.").

Given those principles, the State's position cannot be easily reconciled with the governing statutory language in several respects. We, therefore, reject a construction of the statute making adjudication under the Care and Treatment Act either a necessary or a sufficient condition to convict for criminal use of a weapon. The exercise also demonstrates why Baumgarner's take is truer to the statutory language.

First, we consider the term "subject to" in K.S.A. 2019 Supp. 21-6301(a)(13), describing the relationship between the defendant as a mentally ill person and involuntary commitment for treatment. A common dictionary defines the phrase to mean "liable to

7

receive [or] exposed to" with an example of "*subject* to censure." Webster's New World College Dictionary 1444 (5th ed. 2014). Another dictionary defines the phrase as "under the influence of some later action" used in the sense of "the plan is [subject to] discussion." Merriam-Webster's Collegiate Dictionary 1168 (10th ed. 2001). Those usages square with the definition of "subject to" in a leading legal dictionary as "exposed to (some contingency)." Black's Law Dictionary 1723 (11th ed. 2019). The Legislature's wording tilts strongly toward criminalizing the possession of a firearm by a person who is or has been mentally ill to a degree or in a manner that would expose him or her to involuntary commitment. A successful adjudication of the criminal defendant under the Care and Treatment Act is neither an element of the crime nor a condition precedent to bringing charges. The present tense component of the crime—a mentally ill person can be prosecuted if he or she *is* subject to involuntary commitment— underscores that meaning. A person with that mental status has not been adjudicated but could be.

In the same vein, had the Legislature intended the State's construction, it presumably would have said so directly using the word "adjudicated" as the statutory linchpin of K.S.A. 2019 Supp. 21-6301(a)(13). The Legislature easily could have drafted a statute prohibiting a person who has been adjudicated a mentally ill person subject to involuntary commitment from possessing firearms. But that would be a different prohibition keyed to adjudication under the Care and Treatment Act as the operative fact. The Legislature, however, has taken precisely that approach in another subsection of K.S.A. 2019 Supp. 21-6301 criminalizing the possession of a firearm by a person "who . . . has been convicted of a misdemeanor for a domestic violence offense." K.S.A. 2019 Supp. 21-6301(a)(18). That prohibition rests on the fact of a defendant's previous conviction rather than on circumstances that would subject the defendant to conviction. The Legislature has also criminalized the possession of firearms and other weapons by various categories of *convicted* felons rather than persons subject to conviction for a felony. See K.S.A. 2019 Supp. 21-6304. We ought to presume the Legislature intended to convey different meanings with those varied phrasings of the prohibitions on the

8

possession of firearms by specific classes of persons. See *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (use of different terms within a statute demonstrates legislative intent to convey different meanings); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016) ("The normal presumption is that the employment of different words within the same statutory scheme is deliberate, so the terms ordinarily should be given differing meanings.").

Those considerations favor Baumgarner's reading of K.S.A. 2019 Supp. 21-6301(a)(13). But we are not obligated to pick one or the other construction of the statute and may recognize a third rendering to be the most accurate and, therefore, legally appropriate. We see no such option. Any third or fourth alternative interpretation would be strained and improbable. For example, the "subject to" language arguably might be read to extend the prohibition in K.S.A. 2019 Supp. 21-6301(a)(13) to persons satisfying the comparatively low threshold for the initiation of commitment proceeding under the Care and Treatment Act. But that would take the phrase out of context, since it refers to a condition of mental illness actually warranting commitment for treatment rather than merely triggering a judicial proceeding to make that determination. Such a reading would materially expand the breadth of K.S.A. 2019 Supp. 21-6301(a)(13) without an obvious justification in the language, contrary to the canon of strict construction of criminal statutes.

The statute itself provides no readily apparent reason for the legislative choice in fashioning the mental illness element of K.S.A. 2019 Supp. 21-6301(a)(13). But it need not. So we should avoid unnecessarily speculating about any policy objectives behind the Legislature's decision about what to criminalize. See *State v. Rodriguez*, 305 Kan. 1139, 1154, 390 P.3d 903 (2017) ("[I]t is the Kansas Legislature that establishes what constitutes a criminal act in Kansas, not the courts.").

As K.S.A. 2019 Supp. 21-6301(a)(13) states, the phrase "mentally ill person subject to involuntary commitment for care and treatment" is a defined term in the Care and Treatment Act. K.S.A. 2019 Supp. 59-2946(f). That statutory definition establishes what a jury must find to convict a defendant in a prosecution under K.S.A. 2019 Supp. 21-6301(a)(13). The definition is, to be sure, fairly detailed. But juries empaneled in adjudications under the Care and Treatment Act necessarily deal with the definition. And there are pattern jury instructions outlining what must be proved to establish an individual is "a mentally ill person subject to involuntary commitment for care and treatment. PIK Civ. 4th 130.01, 130.02. Moreover, the complexity of an element of a crime cannot be an argument against the Legislature having defined the crime in that manner. The statute criminalizing aggravated battery in its various forms and the concomitant jury instructions offer an example of the kind of intricate elements the Legislature has developed and entrusted to juries. See K.S.A. 2019 Supp. 21-5413(b); *State v. Robinson*, 306 Kan. 1012, 1026-28, 399 P.3d 194 (2017) (discussion of appropriate instruction generally defining "great bodily harm" as used in aggravated battery statute); PIK Crim. 4th 54.310 (aggravated battery).

The State correctly observes that in a prosecution like this, where the defendant already has been adjudicated with a mental illness permitting his or her involuntary commitment, the evidence would for the most part duplicate what had been presented in the adjudication proceeding. While the point is well taken, it does not undermine the legislative intent displayed in the language of K.S.A. 2019 Supp. 21-6301(a)(13). The Legislature has chosen the mental status of the defendant rather than his or her previous adjudication as an element of the criminal offense. Making the fact of adjudication the element of the crime would be more efficient in the run of cases. But we cannot revise the statutory language in the name of prosecutorial or judicial efficiency. In some hypothetical circumstances, there might be fair notice issues in charging defendants with violating K.S.A. 2019 Supp. 21-6301(a)(13) if they had not been successfully adjudicated with a mental illness permitting involuntary commitment. See *FCC v. Fox Television*

10

*Stations, Inc.*, 567 U.S. 239, 253, 132 S. Ct. 2307, 183 L. Ed. 2d 234 (2012) ("A fundamental principle of our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). But we have nothing of that sort here; and we suppose those prosecutions would be rarities.

More tangentially, the State notes that the Care and Treatment Act includes a statute outlining certain rights of persons subject to adjudication. K.S.A. 2019 Supp. 59-2948. The statute also states that K.S.A. 2019 Supp. 21-6301 applies to a mentally ill person subject to involuntary commitment. K.S.A. 2019 Supp. 59-2948(c). But K.S.A. 2019 Supp. 59-2948(c) neither purports to inform the elements of the criminal offense nor otherwise shapes how a prosecution should proceed. It simply iterates the language of and offers a citation to the criminal statute. Nothing in the intersection of K.S.A. 2019 Supp. 21-6301(a)(13) and K.S.A. 2019 Supp. 59-2948(c) supports the State's argument that adjudication is sufficient to prove an element of the crime.

Along the same line, K.S.A. 2019 Supp. 21-6301(k) provides that the criminal prohibition on possessing firearms in K.S.A. 2019 Supp. 21-6301(a)(13) "shall not apply to" an individual who has been adjudicated a mentally ill person subject to involuntary commitment under the Care and Treatment Act and has since received a "certificate of restoration." Under K.S.A. 75-7c26, the district court adjudicating a person under the Care and Treatment Act may restore that person's right to possess a firearm upon the person's application, if he or she has been discharged from treatment and it finds he or she "is no longer likely to cause harm to" himself or herself or others. Upon that finding, the district court "shall issue a certificate of restoration." K.S.A. 75-7c26(c). The restoration process does not affect the elements of the crime defined in K.S.A. 2019 Supp. 21-6301(a)(13). But a certificate of restoration would create a legal impediment to the successful prosecution of a person for violating K.S.A. 2019 Supp. 21-6301(a)(13). Baumgarner has never suggested he has such a certificate, so we do not further explore

11

whether a certificate of restoration creates a form of immunity or operates an affirmative defense. Again, we suppose the prosecution of a person who has received a certificate of restoration would be a rarity.

In sum, the State had to prove beyond a reasonable doubt that at the time Baumgarner possessed the rifle, he then suffered from a mental illness that would subject him to involuntary commitment or he had previously suffered from such an illness. Having identified what the State had to prove to convict Baumgarner, we return to the overarching question of whether the trial evidence was sufficient.

As we said, the only evidence the State presented bearing on Baumgarner's mental status was a certified copy of the order of adjudication entered in 2015. And that order included a finding by clear and convincing evidence that Baumgarner had a mental illness permitting his involuntary commitment. Under Kansas law, clear and convincing evidence is a degree of proof greater than a preponderance and less than beyond a reasonable doubt. *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018); *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 2, 187 P.3d 594 (2008) ("'Clear and convincing evidence' is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt."). If proved by clear and convincing evidence, a fact has been established to be "highly probable." 286 Kan. at 705. Not to belabor the point, a "highly probable" fact has not been proved beyond a reasonable doubt.

Accordingly, without some additional evidence, the finding in the 2015 order adjudicating Baumgarner could not and did not prove his mental status beyond a reasonable doubt. Jurors properly instructed on the differing burdens of proof could not conclude otherwise. It is no rejoinder to say that the order was some circumstantial evidence that Baumgarner may have been mentally ill beyond a reasonable doubt. In the absence of other evidence, such an inference would be no more than unsupported speculation or conjecture—a vaporous notion insufficient to support a criminal

12

conviction. See *State v. Williams*, 229 Kan. 646, 663-64, 630 P.2d 694 (1981); *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 582, 203 P.3d 735 (2009).

In its supplemental brief, the State contends Baumgarner forfeited any sufficiency argument on his mental status because he did not object to the admission of the 2015 adjudication order as a trial exhibit. But the argument misapprehends the legal effect of forgoing an objection. By doing so, Baumgarner simply conceded the admissibility of the order as evidence—not its sufficiency to prove an element of the crime. In the absence of a contemporaneous objection at trial, Baumgarner could not now challenge the admission of the order on appeal. See K.S.A. 60-404; *State v. King*, 288 Kan. 333, Syl. ¶ 2, 204 P.3d 585 (2009). He hasn't done so. And we have not considered whether the order might have been inadmissible in the first instance. See *Nordgren v. Mitchell*, 716 F.2d 1335, 1339 (10th Cir. 1983) (given different standards of proof, civil judgment of paternity would not be binding in criminal prosecution for nonsupport of child, and "its admission as evidence presumably would be error prejudicial to the defendant"); *State v. Parulski*, No. COA19-673, 2020 WL 7039347, at *4 (N.C. App. 2020) (unpublished opinion) ("Generally, judgment in a civil action is not admissible as evidence in a criminal prosecution."); 46 Am. Jur. 2d Judgments § 632 ("A judgment rendered in a civil action has no preclusive collateral estoppel effect and is not admissible in a subsequent criminal prosecution where the judgment is offered for the purpose of proving facts adjudicated therein, although exactly the same questions are in dispute in both cases.").

The State failed to submit sufficient evidence to establish an element of the charged crime. Baumgarner's recognized remedy requires that we reverse his conviction, vacate his sentence, and enter a judgment of acquittal. See *Tibbs v. Florida*, 457 U.S. 31, 40-41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982); *State v. Hollins*, 9 Kan. App. 2d 487, 489-90, 681 P.2d 687 (1984); *State v. Watt*, No. 121,266, 2020 WL 7413776, at *4 (Kan. App. 2020) (unpublished opinion).

13

Because the State failed to present sufficient evidence to prove Baumgarner's mental status, we need not address his alternative argument challenging the proof of his possession of the rifle. We mention, however, the especially expansive definition the Legislature has given the word "possession" under the Kansas Criminal Code that extends to " having joint . . . control" over an object. K.S.A. 2019 Supp. 21-5111(v). Measured against that definition, the State's evidence that Baumgarner had at least shared possession of the rifle cannot be categorically dismissed. Deciding the point, however, entails an unnecessary judicial exercise. See *Matzuk v. Price*, 70 Va. App. 474, 485 n.8, 828 S.E.2d 252 (2019) (appellate courts should decide cases "'on the best and narrowest grounds available'"); *Cena v. Department of Labor and Industries*, 121 Wash. App. 915, 924, 91 P.3d 903 (2004) (Court of Appeals "avoids deciding issues unnecessary to the resolution of the case.").

We reverse Baumgarner's conviction, vacate his sentence, and enter a judgment of acquittal on the weapons charge under K.S.A. 2017 Supp. 21-6301(a)(13).

\* \* \*

WARNER, J., concurring: I join fully in the court's explanation of its decision and judgment in this case. I write separately to explain a slightly different rationale that led me to the conclusion that the journal entry memorializing the outcome in Dameon Baumgarner's civil-commitment proceeding under the Care and Treatment Act for Mentally Ill Persons, K.S.A. 59-2945 et seq., was insufficient to find a violation of K.S.A. 2017 Supp. 21-6301(a)(13) beyond a reasonable doubt.

It is axiomatic in criminal proceedings that before the State can convict a person of a crime, and thus deprive him or her of liberty, it must prove the elements of that crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Miller v. State*, 298 Kan. 921, 935, 318 P.3d 155 (2014). This is a

14

high bar, requiring the State to show that there is no reasonable possibility that the defendant did not commit each element of the crime charged. See *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

To prove Baumgarner violated K.S.A. 2017 Supp. 21-6301(a)(13), the State was required to prove beyond a reasonable doubt that he possessed a firearm and that he "is or has been a mentally ill person subject to involuntary commitment for care and treatment, as defined in K.S.A. 59-2946." K.S.A. 2019 Supp. 21-6301(a)(13). Without context, this phrase—"a mentally ill person subject to involuntary commitment for care and treatment"—could be interpreted in multiple ways. But as the court's opinion notes, the Kansas Legislature has removed any potential for uncertainty because that phrase is given a specific meaning under K.S.A. 59-2946. And its definition is detailed:

- *Mentally ill person* is defined in K.S.A. 2019 Supp. 59-2946(e) as someone "suffering from a mental disorder that is manifested by a clinically significant behavioral or psychological syndrome or pattern and associated with either a painful symptom or an impairment in one or more important areas of functioning, and involving substantial behavioral, psychological or biological dysfunction."

- A *mentally ill person subject to involuntary commitment for care and treatment* is a mentally ill person, as defined in K.S.A. 2019 Supp. 59-2946(e), who also "lacks capacity to make an informed decision concerning treatment, is likely to cause harm to self or others, and whose diagnosis is not solely one of the following mental disorders: Alcohol or chemical substance abuse; antisocial personality disorder; intellectual disability; organic personality syndrome; or an organic mental disorder." K.S.A. 2019 Supp. 59-2946(f)(1).

K.S.A. 59-2946 goes on to further define these internal components. See K.S.A. 2019 Supp. 59-2946(f)(2) (defining "[l]acks capacity to make an informed decision concerning

15

treatment"); K.S.A. 2019 Supp. 59-2946(f)(3) (defining "[l]ikely to cause harm to others"). And K.S.A. 2019 Supp. 21-6301(a)(13) specifically incorporates these definitions.

Notably absent from K.S.A. 59-2946's statutory definition, and by extension from K.S.A. 2019 Supp. 21-6301(a)(13), is consideration as to whether the person in question has been previously adjudicated in a civil-commitment proceeding to be a mentally ill person in need of the State's care. Given the placement of that definition within the Care and Treatment Act, this absence makes sense. In a civil-commitment proceeding under the Act, the State must prove these elements of K.S.A. 59-2946(f)(1)—that a person is "a mentally ill person subject to involuntary commitment for care and treatment"—by clear and convincing evidence. K.S.A. 2019 Supp. 59-2966. The journal entry of the civil-commitment proceeding merely memorializes the judge's or jury's finding that the State met this evidentiary burden.

But proof by clear and convincing evidence is a less stringent standard than proof beyond a reasonable doubt. *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). For that reason, the journal entry showing the State met its burden of proof in a civil-commitment proceeding—standing alone—is insufficient to show that the State's evidence in the commitment case would meet the more stringent standard for criminal culpability in K.S.A. 2019 Supp. 21-6301(a)(13).

It may be that the legislature desired for the adjudicative finding in a civil-commitment proceeding to prohibit the committed person from possessing a firearm. But if that were the legislative intent, K.S.A. 2019 Supp. 21-6301(a)(13) should have employed specific language to that effect—indicating that a person is prohibited from possessing a firearm *when an adjudication under the Care and Treatment Act for Mentally Ill Persons found* the defendant is or has been a mentally ill person subject to

16

involuntary commitment for care and treatment, as defined in K.S.A. 59-2946. But K.S.A. 2019 Supp. 21-6301(a)(13) does not do that.

A court must interpret statutes as they are written. Judges cannot and should not rewrite statutory text to achieve what we believe was the legislature's goal. If the Kansas Legislature wishes to accomplish a different result from what we reach here, it is free to revisit K.S.A. 2019 Supp. 21-6301(a)(13)'s language. But as that statute is currently written, the journal entry from Baumgarner's civil-commitment proceeding—without more—is insufficient evidence to prove beyond a reasonable doubt that he "is or has been a mentally ill person subject to involuntary commitment for care and treatment, as defined in K.S.A. 59-2946."