NOT DESIGNATED FOR PUBLICATION

No. 127,727

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ROBIN S. WOMACK,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID DAHL, judge. Submitted without oral argument. Opinion filed February 27, 2026. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., HURST and BOLTON FLEMING, JJ.

PER CURIAM: Robin S. Womack pleaded no contest to mistreatment of an elderly person. Though Womack had an extensive criminal history, the district court initially suspended his prison sentence and placed him on probation in the hope that he would seek and benefit from drug and alcohol treatment. But Womack continued to use drugs in violation of the conditions of his probation, eventually causing the district court to revoke his probation and order him to serve his 114-month prison sentence. Womack now appeals, arguing the court's decision to revoke his probation—rather than to seek some other form of drug treatment—was an abuse of discretion. He also challenges the legality

of his sentence, claiming the duration of that sentence was based on an incorrect criminal-history score. After carefully reviewing the parties' arguments and the record before us, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Womack pleaded no contest to mistreatment of an elderly person in 2023. This conviction arose out of an argument between Womack, who was then 61 years old, and his 81-year-old mother where Womack threw his mother to the ground, causing her to break her femur. In exchange for the plea, the State dismissed additional charges, and the parties agreed to recommend that the sentence imposed run consecutive to prior cases and that Womack be granted a dispositional departure of 36 months' probation.

Womack's sentencing hearing for this offense took place in May 2023. In preparation for that hearing, the State prepared a presentence-investigation report, which calculated Womack's criminal-history score as B. This score was based on Womack's 39 previous convictions; relevant to our discussion, the report aggregated 6 of Womack's previous misdemeanor convictions—all violations of Wichita municipal ordinances criminalizing battery and domestic battery—to be treated as 2 person felonies.

Womack did not object to this aggregation or to the report's recommended criminal history at the sentencing hearing. Consistent with this criminal-history score and the severity level of Womack's offense, the district court imposed a 114-month prison sentence with 12 months of postrelease supervision, running the sentence consecutive to all other cases. The court then suspended Womack's sentence and ordered him to serve 36 months of probation. The district court explained that Womack received probation because the victim was a family member and the incident stemmed from a drug addiction for which Womack was seeking help. As a condition of probation, Womack was not allowed to contact his mother.

In October 2023, Womack filed a pro se "Motion to Dismiss 'No Contact Order,'" asking the court to allow him to contact his mother. At the hearing on the motion, the State reported that the victim wanted to be sure that Womack was getting the help he needed for his substance and gambling addictions before any contact was allowed. The district court granted the motion, finding that Womack was enrolling in mental health and anger management classes but adding a probation condition that Womack address his gambling issues.

Despite the district court's explanation that Womack was granted probation so he could benefit from drug and alcohol treatment and the continued emphasis placed on these concerns at the November 2023 hearing, Womack had repeated difficulties in remaining drug- and alcohol-free while he was on probation.

In January 2024, Womack admitted using cocaine in violation of the conditions of his probation and received a 48-hour jail sanction.

In April 2024, the State issued a new warrant alleging that Womack had violated the conditions of his probation on three occasions between January and April—all drug-related infractions. The district court held a hearing on these allegations in May 2024. There, Womack did not dispute the various allegations in the warrant relating to his drug use, though he attempted to offer exculpatory explanations for each violation. Womack's probation officer recommended that he serve a 72-hour jail sanction and that the no-contact order with his mother be reinstated. The State recommended that the court revoke probation and impose the underlying sentence. After hearing these arguments and recommendations, the district court revoked Womack's probation and ordered him to serve the original 114-month prison sentence.

DISCUSSION

Womack challenges two aspects of the district court's ruling. He claims the court abused its discretion when it revoked his probation instead of modifying the conditions of his release to allow him to pursue additional drug-treatment options. He also argues for the first time on appeal that his sentence was determined using an incorrect criminal-history score, challenging the legality of aggregating his previous battery and domestic-battery convictions as person felonies. We find neither argument persuasive.

1. *The district court did not abuse its discretion in revoking Womack's probation and imposing the underlying sentence.*

Womack argues that the district court erred when it revoked his probation and imposed the original sentence. He argues the decision was unreasonable because his probation officer had recommended continued probation; he also claims that the root cause of his violations was his declining health, not his drug abuse. He notes that the district court could have addressed his violations by modifying his probation or imposing an additional sanction, rather than revoking probation outright.

After a probation violation has been established, a district court has discretion to extend an offender's probation, impose other sanctions, or revoke that probation unless the court is otherwise limited by statute. See *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). Appellate courts will only reverse that decision on appeal if it resulted from an abuse of the court's discretion—that is, when the judgment is arbitrary, fanciful, or unreasonable, or based on an error of law or fact. 315 Kan. at 328; *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Womack bears the burden of showing such an error occurred here. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

Womack does not challenge the legality of the district court's decision to revoke his probation, nor does he claim that the court's decision was based on a factual error. Instead, he argues that the revocation was inherently unreasonable. But we disagree.

The Kansas Legislature determined that a conviction for mistreatment of an elderly person should carry a presumptive prison sentence for defendants who have a criminal-history score of G and above. K.S.A. 2022 Supp. 21-5417(a)(1), (b)(1)(A); K.S.A. 21-6804(a). As we discuss in the following section, Womack had an extensive criminal history, resulting in a criminal-history score of B. Despite the legislature's presumption that Womack's crime carry a prison sentence, the district court showed leniency through a dispositional departure and allowed him to serve probation. But the district court made clear at sentencing and at the hearing in November 2023 that it was concerned with Womack's drug and alcohol addictions, especially since these conditions triggered his violent conduct toward his mother that led to his conviction.

Because Womack's probation was the source of a dispositional departure, the district court could have revoked that probation after Womack's first probation violation. See K.S.A. 22-3716(c)(7)(B). But the court again showed leniency, imposing a jail sanction and allowing Womack to remain on probation. Despite these warnings, Womack continued to use drugs and resist treatment, leading to multiple additional violations between January and April 2024. Rather than acknowledging the reality of his addiction, Womack attempted to explain away his positive drug tests. Under these circumstances, we cannot say that the district court abused its discretion when it revoked Womack's probation and ordered him to serve his underlying sentence.

2. *Womack has not demonstrated that the district court based his sentence on an incorrect criminal-history score.*

Womack also argues that the district court relied on an incorrect criminal-history score at sentencing and thus imposed an illegal sentence. He asserts that the court should have categorized his six Wichita battery and domestic-battery convictions as *nonperson* misdemeanors, rather than *person* misdemeanors—meaning those convictions should not have been aggregated and treated as person felonies at sentencing. In particular, he points out that the Wichita battery ordinances giving rise to his municipal convictions criminalize *insolent* contact, while the Kansas battery statutes criminalize *insulting* contact. He argues that these words have different meanings and cover different realms of activities and asserts that the ordinance's reach is broader. While Womack presents an interesting linguistic question, we ultimately do not find his argument convincing.

Womack acknowledges that he did not raise this argument before the district court or object in any way to his criminal history at sentencing. But as he notes in his brief, Kansas courts recognize that the calculation of a defendant's criminal history is a matter that goes to the legality of the sentence imposed. See *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 3, 350 P.3d 1054 (2015). Courts may "correct an illegal sentence at any time while the defendant is serving such sentence." K.S.A. 22-3504(a). And a defendant's failure to object at sentencing to the criminal-history score will not prevent a challenge to how prior convictions were classified or counted. 301 Kan. 1018, Syl. ¶ 4.

Yet the timing of Womack's challenge is not without effect. The State carries the burden at sentencing to prove the accuracy of the defendant's criminal history by a preponderance of the evidence. See K.S.A. 21-6814(a)-(c). But if a defendant stands silent at sentencing and does not object to or otherwise challenge their criminal-history score until later, as Womack has done here, the burden shifts to the defendant to show the criminal-history calculation was improper. K.S.A. 21-6814(c), (d). This is true regardless

6

of whether the defendant's challenge arises in a motion before the district court or for the first time on appeal. K.S.A. 21-6814(c), (d). Thus, the burden rests with Womack to demonstrate that the court erred when it categorized his previous municipal violations as person misdemeanors.

Resolution of this question requires us to interpret and apply the Kansas Sentencing Guidelines—matters over which our review is unlimited. *State v. Keel*, 302 Kan. 560, 571-72, 357 P.3d 251 (2015); see *State v. Samuel*, 309 Kan. 155, 157, 432 P.3d 666 (2019). The Guidelines use a combination of a person's criminal history and the severity level of the crime of conviction to determine the presumptive sentencing range for those crimes. See K.S.A. 21-6804 (providing sentencing grid for nondrug crimes). A person's criminal history for sentencing purposes generally includes any previous felony and misdemeanor convictions, including convictions from violations of municipal ordinances. See K.S.A. 21-6810(a), (d)(6); K.S.A. 21-6811(e). These convictions are further classified as "person" or "nonperson" crimes, with person crimes generally resulting in a more severe criminal-history score. See K.S.A. 21-6804(a).

The Guidelines also aggregate certain misdemeanors, treating them as felonies for criminal-history purposes. Relevant here, the Guidelines direct that "[e]very three prior adult convictions . . . of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction . . . of a person felony for criminal history purposes." K.S.A. 21-6811(a). The Guidelines do not impose a similar aggregation for nonperson misdemeanors. See K.S.A. 21-6811.

But while Kansas law has defined crimes committed in this state as person or nonperson offenses for over 30 years, Kansas municipalities do not generally categorize their ordinance violations using this framework. Thus, the Guidelines instruct courts to determine whether a particular municipal ordinance violation is "comparable" to other person or nonperson misdemeanors and score them accordingly. K.S.A. 21-6810(d)(6).

7

Returning to the facts before us, the parties agree that the legality of Womack's criminal-history score turns on whether Womack's previous Wichita battery and domestic-battery violations are "comparable" to a Kansas person crime. If so, the district court properly categorized them as person misdemeanors under K.S.A. 21-6810(d)(6) and properly aggregated those six person misdemeanors as two person felonies under K.S.A. 21-6811(a). The parties disagree, however, as to what it means for an offense to be "comparable" to another under Kansas law.

But Kansas Supreme Court precedent provides an answer. In *State v. Wetrich*, 307 Kan. 552, 561-62, 412 P.3d 984 (2018), the court interpreted the Guidelines' use of the word "comparable" when classifying out-of-state crimes as person or nonperson offenses to mean that "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." The court later applied *Wetrich*'s interpretation to K.S.A. 21-6810(a)'s use of "comparable" when aggregating person misdemeanors to person felonies. *State v. Russ*, 309 Kan. 1240, 1243, 443 P.3d 1060 (2019).

The State devotes significant energy in its brief to an argument that *Wetrich* was wrongly decided. But while the legislature has since clarified its meaning regarding comparable offenses for out-of-state felonies, see K.S.A. 21-6811(e)(3)(B), it has not expanded that clarification to the categorization of Kansas municipal offenses. And as the State acknowledges, this court is duty-bound to follow the Kansas Supreme Court precedent absent an indication that the court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). *Wetrich*'s framework thus guides our analysis here.

As we have noted, Womack's misdemeanor convictions for battery and domestic battery arose in Wichita, all before 2011. At that time, Wichita's municipal ordinances

defined misdemeanor battery as "(1) intentionally or recklessly causes bodily harm to another person or (2) intentionally causes physical contact with another person when done in a rude, *insolent* or angry manner." (Emphasis added.) Wichita Municipal Ordinance (W.M.O.) § 5.10.020 (1996). The Wichita code used this same phrasing—referencing contact with another person in a "rude, insolent or angry manner"—in its definition of domestic battery as well. W.M.O. § 5.10.025 (1996). Wichita amended these ordinances in 2012 to state that a misdemeanor battery and domestic battery can occur with physical conduct done in a "rude, *insulting* or angry manner." (Emphasis added.) W.M.O. § 5.10.020 (2012) (battery); W.M.O. § 5.10.025 (2012) (domestic battery).

Kansas statutory definitions followed a similar linguistic path. Before 1993, Kansas defined battery as "unlawful, intentional touching or application of force to the person of another, when done in a rude, *insolent* or angry manner." (Emphasis added.) K.S.A. 21-3412 (Ensley 1988). The updated Kansas statute defines battery as "(1) [k]nowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, *insulting* or angry manner." (Emphasis added.) K.S.A. 21-5413(a) (battery); see also K.S.A. 21-5414(a)(2) (domestic battery, using the same "insulting" language).

The State points out that the Kansas Supreme Court has previously considered a different aspect of Wichita's domestic-battery ordinance and the Kansas battery statute—the relationship between the batterer and the battered—and concluded that "acts constituting an ordinance violation under the 2012 and 1996 versions of [the] Wichita [domestic-battery ordinance] would always violate the state [battery] statute," meaning a violation of that ordinance is a "person offense." *Russ*, 309 Kan. at 1243-44 (citing K.S.A. 2018 Supp. 21-5413[a], [g][1]). But this statement has limited value to our analysis, as the *Russ* court was not asked to consider whether there is a difference between "insolent" and "insulting" contact.

When appellate courts interpret statutory language, we "must, as a first priority, strive to honor the legislative intent and purpose." *State v. Baumgarner*, 59 Kan. App. 2d 330, 334, 481 P.3d 170, *rev. denied* 313 Kan. 1042 (2021). Statutory language must be given its ordinary meaning, which may be clarified through dictionary definitions if necessary. 59 Kan. App. 2d at 335. In discerning the meanings of the statute, it is important that courts do not "recraft a statute to suit [their] view of tidy drafting or good public policy." 59 Kan. App. 2d at 335.

Here, both parties employ dictionary definitions of "insolent" and "insulting" in an effort to support their various readings of the ordinances and statutes. Our review of these definitions reveals little, if any, meaningful difference between the two words.

Womack's brief asserts that insolence "does not *require* an intent to be insulting," whereas definitions of insulting behavior demand "'giving or causing insult.'" He points out that the *Collins Online Dictionary*, www.collinsdictionary.com, defines "insulting" as "giving or causing insult," while it defines "insolent" as "boldly rude or disrespectful" (in American English). But these citations only tell part of the story. That same dictionary defines "insolent" behavior as conduct that is "boldly rude or disrespectful, contemptuously impertinent; *insulting*." (Emphasis added.) It also defines "insulting" as "giving or causing insult; characterized by affronting rudeness, *insolence*, etc." (Emphasis added.)

While it is possible for any party to isolate portions of dictionary definitions to support their various positions, that practice does little to further courts' interpretive goal—to ascertain legislative intent. Courts take a more practical view, giving ordinary words like "insolent" and "insulting" their ordinary meanings. And on the whole, common usage treats insolent conduct as merely one type of insulting behavior. See, e.g., *Merriam-Webster Online Dictionary*, www.merriam-webster.com (stating something is

10

"insulting" when it is "giving or intended to give offense" or "a gross indignity: an instance of insolent or contemptuous speech or conduct").

In the end, we conclude that if there is any difference between these two terms, the universe of insolent conduct is subsumed into—and slightly narrower than—the universe of insulting conduct. In other words, insolent behavior is at most a subset of insulting behavior. Accord *State v. Morris*, No. 111,783, 2016 WL 299056, at *4-5 (Kan. App.) (unpublished opinion) (considering the differences between K.S.A. 21-3412 [Ensley 1988] ["insolent"] and K.S.A. 2012 Supp. 21-5413[a] ["insulting"] and concluding the two statutes cover identical conduct, though they do not use identical phrasing), *rev. denied* 305 Kan. 1256 (2016). The pre-2012 Wichita ordinances for battery and domestic battery criminalized conduct that was "identical to, or narrower than" the current Kansas battery and domestic-battery statutes. *Wetrich*, 307 Kan. at 561-62. Thus, under *Wetrich*, these ordinances are *comparable* to their statutory counterparts.

Kansas statutes define both battery and domestic battery as person offenses. K.S.A. 21-5413(h)(1); K.S.A. 21-5414(c). The district court did not err when it concluded at sentencing that Kansas law also categorized Womack's comparable violations of Wichita ordinances as person misdemeanors. See K.S.A. 21-6810(d)(6). And it then properly aggregated six of those person misdemeanors to be treated as two person felonies, resulting in a criminal-history score of B. See K.S.A. 21-6811(a).

Womack has not demonstrated that his sentence was illegal. We affirm the district court's judgment.

Affirmed.