Nos. 120,134
120,252

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

CHRISTOPHER M. BLISS,
*Appellee/Cross-appellant*.

SYLLABUS BY THE COURT

1.

When a person has been charged in the alternative, he or she may be convicted and sentenced on only one of the alternative offenses.

2.

A district court deciding whether to consolidate multiple cases for trial may take into consideration any evidentiary complications that might arise from the consolidation. But the fact that consolidating cases might render the admission of some evidence more difficult, or require that its foundation be established through different methods, does not render consolidation unreasonable as a matter of law.

3.

Kansas law requires a party to make a specific and timely objection at trial in order to preserve evidentiary issues for appeal. The purpose of this objection requirement is to allow the district court to act as an evidentiary gatekeeper—to rule on the admissibility of evidence based on specific arguments raised at trial, with the context of other evidence and testimony presented.

4.

Though courts have recognized exceptions in some contexts that allow the consideration of issues on appellate review that were not preserved by a specific objection at trial, K.S.A. 60-404 does not allow those exceptions to come into play in the context of the admissibility of evidence.

5.

A party seeking to admit evidence at trial must articulate a specific basis for that admission. Consistent with the specific-objection requirement under K.S.A. 60-404, this practice ensures that the trial judge has a chance to fully consider whether the evidence should be admitted and to avoid any reversible error.

6.

A party may not seek to admit evidence on one ground at trial and then offer a different ground for its admissibility on appeal. The practice of raising new evidentiary arguments on appeal thwarts the purpose of the specific-objection requirement, deprives the district court of the ability to fully analyze the admissibility of the evidence in question, and deprives the reviewing court of the district court's evaluation of that question.

7.

A party may not knowingly call a witness who intends to invoke the Fifth Amendment's protection against self-incrimination for the purpose of having the jury witness that invocation.

8.

Appellate review of a district court's decision to impose a departure sentence follows a three-step framework. An appellate court first determines whether the ground given for the departure can, as a matter of law, be considered as a mitigating factor under

K.S.A. 21-6815. If it can, the appellate court next considers whether the cited ground is supported by the record. Finally, the appellate court considers the reasonableness of the district court's assessment that this ground, individually or when combined with other circumstances considered, constituted a substantial and compelling reason to depart from the presumptive sentence under the Kansas Sentencing Guidelines.

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed September 24, 2021. Convictions affirmed in part and reversed in part, sentence vacated in part, and case remanded with directions.

*Matt Maloney* and *Lesley A. Isherwood*, assistant district attorneys, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Peter Maharry* and *Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee/cross-appellant.

Before MALONE, P.J., WARNER and HURST, JJ.

WARNER, J.: A jury found Christopher Bliss guilty of several crimes arising from a violent argument with his wife. The appeal before us involves issues raised by Bliss and by the State. Bliss challenges several rulings the district court made before and during his jury trial, ranging from evidentiary claims to constitutional questions to the sufficiency of the evidence supporting one of his convictions. And the State challenges the district court's decision to impose a prison sentence shorter than the presumptive duration under Kansas law. After carefully considering the parties' arguments, we affirm all but one of Bliss' convictions, and we affirm the district court's departure sentence.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of March 12, 2017, M.B. arrived at Wesley Medical Center in Wichita with her 12-year-old daughter A.B. The treating nurse noted M.B. had a cut

3

requiring stitches on her right ring finger. Because M.B. primarily speaks Spanish, she explained through an interpreter that she cut her hand when Bliss—her husband—threw a plate at her. The nurse reported the injury to police, and Officers Jessica Helwi and Jesus Soto of the Wichita Police Department responded to the call. After photographing M.B.'s injury and discussing M.B.'s statement with the nurse, Officer Helwi interviewed A.B., and Officer Soto interviewed M.B.

During her interview, M.B. described a series of interactions with Bliss that began the previous day. Late on March 11, M.B. was lying in bed with her one-year-old son asleep next to her when Bliss sat down and said he wanted to have sex. After she declined, Bliss got on top of her, kissing her neck and rubbing her over her clothing. Although M.B. tried to scream, Bliss covered her mouth with his hand and told her he would have sex with her whether she wanted to or not. They briefly struggled until the baby woke up and started to cry; Bliss then left and slept elsewhere.

M.B. told the officer that she and Bliss were in their bedroom the next morning, again arguing about having sex. Bliss was kissing M.B.'s neck and pulled down her pants but stopped when he saw A.B. looking in the room. A.B. told Officer Helwi that she went upstairs after hearing M.B. scream and saw M.B. with her pants pulled down. Bliss, M.B., and A.B. then went downstairs, and A.B. went outside.

M.B. stated that at some point, she told Bliss that she was tired of arguing with him in front of their children and no longer wanted to be with him. Bliss punched her in the arm and stated that if he could not have her, nobody could. M.B. then took their baby upstairs and started packing a suitcase; Bliss followed and threw the suitcase, and they began arguing again. During this argument, M.B. noticed the baby had moved near the staircase. Afraid he might fall, she went to pick him up; Bliss picked him up first and closed the door, holding it shut for a few moments and trapping M.B. inside the bedroom.

4

M.B. explained that when she eventually got out of the room and past Bliss, she went downstairs to leave through the front door. Bliss reached the door and blocked M.B.'s exit, telling her to go to the basement. She then began running to the back door, hoping to move the refrigerator sitting in front of the door. But as she ran to the kitchen, Bliss threw a plate at her. M.B. raised her arm to block the plate, and the plate cut her finger. M.B. again attempted to go back to the front door, but in the living room, Bliss grabbed her by the hair and threw her to the ground. He then began throwing items from the mantle and threatened to kill her and their children. Eventually, M.B. opened a window and told A.B.—who was still outside—to call A.B.'s aunt and, later, 911. Bliss eventually allowed M.B. to go outside to calm the baby, who was crying.

The State charged Bliss with attempted rape, aggravated sexual battery, aggravated battery, and two counts (charged in the alternative) of aggravated kidnapping—one to facilitate the commission of attempted rape and the other to inflict bodily injury on or terrorize M.B. During the pretrial proceedings, the district court granted a protective order prohibiting Bliss from contacting M.B., and Bliss was released on bond.

About a month after the incident in March, M.B. reported to law enforcement that Bliss had called her on the phone, sent her social-media messages, and confronted her at a local shopping center. The police department also learned that Bliss attempted to call M.B. from jail, with these calls detailed in the jail's phone records. Based on this information, the State charged Bliss in a separate case with violating and attempting to violate a protective order.

M.B. initially cooperated with police officers during the investigation. She spoke to the police and gave investigators permission to review her medical files. She informed the police about Bliss' attempts to contact her. She also discussed her concerns with a victim advocate at the police department. For instance, she described how Bliss' family

came over to the house where she was staying in an effort to convince her to drop the charges—actions that eventually led to charges against Bliss' mother. And because Bliss' family threatened to have her deported—M.B. is not a U.S. citizen—the victim advocate connected her with an immigration attorney.

M.B. testified at the preliminary hearing in June 2017. During the hearing, M.B.'s testimony broadly confirmed her statements she provided to police at the hospital, though M.B. could not recall several details. She also responded to inquiries about Bliss' postarrest contact with her before indicating that she wanted to stop answering questions. Bliss cross-examined M.B. regarding the March argument, but he did not inquire as to the contacts made in violation of the court's protective order.

After the preliminary hearing, M.B. became less cooperative. And in August 2017, M.B. provided a statement recanting her original accusations to the Sedgwick County Public Defender's Office—the office representing Bliss. In this recantation, M.B. stated that on March 11, she and Bliss had been arguing about money. She also stated that they were going to have sex the next day, but A.B. interrupted them. And she explained that after they went downstairs, she and Bliss began arguing about money again. She stated she threw a plate at Bliss, cutting her finger, and her sister-in-law eventually drove her to the hospital. M.B. went on to describe how she told the prosecutor that she did not want to press charges but was told the judge would place her in jail and that Bliss would try to hurt her.

Before trial, the State filed several motions, three of which are relevant to this appeal:

- The State asked the court to consolidate the two pending cases against Bliss—the first case arising from the incidents on March 11 and 12 and the second case involving violations of the protective order. The State explained that the facts in

6

both cases were tied together, as the protective order Bliss was charged with violating in the second case was issued as a condition of his bond in the first case.

- The State indicated that it had been unable to locate M.B. and A.B. to serve subpoenas for trial and sought a determination that both witnesses were unavailable to testify. The State sought to admit M.B.'s preliminary hearing testimony, her statements to police officers, and her conversations with the victim advocate under various exceptions to the hearsay rule. The State also sought to admit A.B.'s statements during her 911 call and her statements to Officer Helwi at the hospital.

- The State requested that the court exclude any evidence of M.B.'s recantation. In making this request, the State reiterated that M.B. was unavailable to testify. It noted that the recantation did not fall into any hearsay exceptions.

The district court held a series of hearings to discuss the State's requests and Bliss' objections. After considering the parties' arguments, the court granted all three motions. As a result, both cases against Bliss were tried together. Neither M.B. nor A.B. testified at trial. The jury heard evidence relating to M.B.'s statements to law enforcement at the hospital and afterward, as well as A.B.'s 911 call and her statements to the officer at the hospital. The district court also did not allow the jury to hear evidence regarding M.B.'s subsequent recantation of her statements, though it informed the parties that it would reconsider that ruling if M.B. appeared and testified at trial.

On the first day of trial, M.B. arrived with court-appointed counsel. Through an interpreter, she indicated she wished to invoke her right against self-incrimination under the Fifth Amendment to the United States Constitution. The court discussed this request with the parties and M.B. outside the jury's presence. Bliss argued that M.B. should be required to exercise her right against self-incrimination in front of the jury, but the court

7

disagreed based on longstanding Kansas caselaw. M.B. then provided limited testimony to the court, declining to answer each question asked based on her right under the Fifth Amendment.

At the close of the trial, the jury found Bliss guilty of aggravated sexual battery, both counts of aggravated kidnapping, and the lesser-included offense of battery, as well as violation of a protective order and attempted violation of a protective order. The jury found that Bliss was not guilty of attempted rape.

Under the Kansas Sentencing Guidelines, Bliss' conviction of aggravated kidnapping carried the longest presumptive sentence—a range of 203 to 226 months in prison. Bliss requested both durational and dispositional departures from the guideline sentence. The district court held a series of three sentencing hearings to hear evidence and arguments regarding his requests.

During the first sentencing hearing, M.B. appeared and reiterated the statements articulated in her August 2017 recantation. She also alleged that her statements to police had been mistranslated, that translators had inserted their own comments in place of her own, and that she had been intimidated by the prosecutor and detectives into not testifying at trial. At the two subsequent hearings, the State presented the evidence of several law enforcement witnesses as an effort to counter M.B.'s allegations.

At the third hearing, the court denied Bliss' request for probation but granted a durational departure. It noted that Bliss lacked a violent criminal history and, though it questioned M.B.'s motivation for changing her position articulated at the preliminary hearing, it took her current wishes into consideration. The court found that the combination of these two factors warranted a shorter prison sentence than the guidelines set. The court ultimately imposed a controlling 84-month prison sentence, with the sentences for all charges in both cases to be served concurrently.

The State appealed, claiming the district court erred when it granted the sentencing departure. Bliss then cross-appealed his convictions, raising multiple constitutional and evidentiary challenges.

## DISCUSSION

Though the State initiated this appeal, its challenges relate to Bliss' sentence. Before we reach these arguments, we must consider Bliss' claims that several of the district court's rulings—either individually or in combination—require reversal or a new trial. We then turn to whether the district court erred when it granted Bliss' request for a durational departure at sentencing. For the reasons we describe below, we affirm all but one of Bliss' convictions, and we find the district court did not abuse its discretion when it imposed the departure sentence.

## CHALLENGES TO BLISS' TRIAL AND CONVICTIONS

1. *The court erred when it entered a sentence against Bliss on both alternative charges of aggravated kidnapping.*

Bliss first argues the State presented insufficient evidence to convict him on one of the two charges of aggravated kidnapping. He notes that there was no evidence presented at trial that he constrained M.B. to facilitate his flight. The State concedes the evidence was insufficient to support that conviction. We appreciate the State's candor on this issue. But we pause before considering Bliss' remaining issues to underscore an additional and fundamental error with that conviction: Because Bliss was charged with the two counts of aggravated kidnapping in the alternative, he could not be convicted of and sentenced on both charges.

The State charged Bliss with two alternative counts of aggravated kidnapping. At trial, the district court instructed the jury that Bliss had been charged in Count 4 with

9

confining M.B. with the intent "to facilitate flight" and in Count 5 with the intent "to inflict bodily injury on [M.B.] or to terrorize" her. See K.S.A. 2020 Supp. 21-5408(a)(2), (a)(3), (b). Despite the absence of evidence on Count 4, the jury's verdict found Bliss guilty of both charges. The district court then entered judgments of conviction on Counts 4 and 5—treating them as independent, not alternative, charges—and imposed concurrent sentences of 84 months' imprisonment for each conviction, with the sentence on Count 5 "held in abeyance."

When a person has been charged in the alternative, as Bliss was here, he or she "may be convicted of only one of the alternative offenses." *State v. Garza*, 290 Kan. 1021, Syl. ¶ 5, 236 P.3d 501 (2010). This means that the district court could only enter a judgment of conviction and impose a sentence for one count of aggravated kidnapping. Bliss does not challenge the sufficiency of the evidence to support his conviction in Count 5—the aggravated-kidnapping charge based on K.S.A. 21-5408(a)(3), (b). But whatever the evidence presented, his conviction and sentence relating to Count 4 cannot stand on its own. See 290 Kan. at 1035. Instead, the jury's verdicts in Count 4 and Count 5 are merged as a matter of law, resulting in only one conviction and sentence. See *State v. Vargas*, 313 Kan. 866, 867, 492 P.3d 412 (2021).

We thus remand this case to the district court with directions to enter an amended journal entry correctly reflecting that Bliss' conviction on Count 4 has merged into his conviction for aggravated kidnapping on Count 5, which he does not challenge. This action will result in a single conviction for aggravated kidnapping and a single 84-month sentence, effectively reversing one of his convictions for that offense and vacating one of his sentences. Having resolved this matter, we proceed to consider Bliss' other challenges to his convictions.

2. *The court did not err when it consolidated the two cases against Bliss for trial.*

Bliss also argues that the district court erred when it consolidated the two cases against him for trial, alleging that this decision violated his constitutional right to confront witnesses against him. Given the framing of Bliss' argument, some additional background is necessary for context.

As we have previously explained, the district court granted the State's request to consolidate the two cases against Bliss shortly before trial, finding the cases were sufficiently factually connected to warrant trying them together. At trial, the State presented evidence of Bliss' post-protection-order contacts with M.B. primarily through the testimony of three witnesses.

- Officer Alejandro Avendano explained that he met with M.B. on April 11, 2017, after she came to a Wichita police station to make a report. Officer Avendano indicated that M.B. showed him several messages on her phone from Bliss, sent in the previous two days. The State offered screenshots of these messages through Officer Avendano's testimony, and the officer (who speaks Spanish) translated them for the jury. The messages largely consisted of Bliss apologizing, expressing frustration with the lack of response from M.B., and stating that he missed M.B. and their children. Bliss asserted a continuing objection based on his pretrial objections when the screenshots were offered; the court overruled his objection and admitted them.

- Sergeant Bill Stevens later testified that he met with M.B. at the police station on April 12. She told him that she had met Bliss at a shopping center and gave Sergeant Stevens permission to download the contents of her phone. He also testified that Bliss made three calls to M.B. from jail on April 16, though those calls were not answered.

11

- Captain Jared Schechter testified as a records custodian, allowing the State to introduce a log of phone calls Bliss made from jail.

On appeal, Bliss points out that while there was a preliminary hearing in the first case against him, involving his physical altercation with M.B., there was never a preliminary hearing in the second case involving the protective-order charges. He claims that the evidence presented to support the charges in the second case was based on testimonial statements by M.B. to police officers, and as a result of the district court's consolidation decision, he never had the opportunity to cross-examine M.B. about the statements. Thus, Bliss asserts, the consolidation of those two cases for trial had the practical effect of violating his constitutional right to confront witnesses against him.

Although Bliss frames his argument as a challenge to the district court's consolidation decision, he actually raises two questions for our review. One involves the court's decision to try the cases together; the other challenges the constitutionality of the evidence supporting his convictions for violation of a protection order and attempted violation of a protection order. These are independent questions involving different standards and considerations, and we must analyze each question separately.

2.1. *The district court did not abuse its discretion when it consolidated the two cases against Bliss for trial.*

An appellate court engages in a three-step analysis when reviewing a district court's decision to consolidate multiple cases for trial.

- First, we determine whether K.S.A. 22-3203—which allows "multiple complaints against a defendant" to be tried together "if the State could have brought the charges in a single complaint"—permits consolidation of the cases. *State v. Hurd*, 298 Kan. 555, Syl. ¶ 1, 316 P.3d 696 (2013). K.S.A. 22-3202 lists three

12

circumstances where charges for multiple offenses may be filed in a single complaint, including when the charges are based on two or more acts "connected together or constituting parts of a common scheme or plan." K.S.A. 22-3202(1). Whether this condition, or one of the others listed in the statute, is satisfied requires a mixed assessment, with the appellate court deferring to the district court's factual findings when they are supported by substantial competent evidence and exercising unlimited review over the district court's legal conclusions. 298 Kan. at 561.

- Second, when consolidation is authorized by Kansas statutes, we determine whether the district court abused its discretion in determining whether consolidation was appropriate in the case before it. After all, even when consolidation is permissible under K.S.A. 22-3203, a district court is not required to consolidate cases for trial. Rather, the language in K.S.A. 22-3202(1) is permissive—stating crimes "may" be joined in a single complaint if one of the criteria is met—meaning a district court has discretion to decide whether to consolidate cases that meet the statutory criteria. We will only overturn this decision if the district court renders a decision with which no reasonable jurist would agree or bases its decision on an error of fact or law. 298 Kan. at 561.

- Third, if the district court erred in its consolidation decision, we must determine whether that error affected the substantial rights of the parties. See K.S.A. 2020 Supp. 60-261; 298 Kan. at 561.

Here, the State moved to consolidate the two cases against Bliss before trial, arguing that they were connected to one another and based on a common scheme or plan. See K.S.A. 22-3202(1). In doing so, the State pointed out that the protective orders central to the second case were issued by the court as a condition of Bliss' bond in the

13

first case, given the charges of domestic violence against him. And both cases involved potentially abusive interactions between Bliss and M.B.

Bliss opposed the consolidation. At the initial hearing on the State's motion, he argued that because there had not been a preliminary hearing in the second case, he never had the opportunity to cross-examine M.B. regarding her statements to law enforcement involving the protection orders. At Bliss' recommendation, the court deferred its decision on the State's motion until it held a hearing on the State's other pending pretrial motions regarding the unavailability of M.B. and A.B.

After hearing evidence and argument about those issues at a second hearing, the court found that the parties were essentially in agreement that M.B. and A.B. were unavailable for trial. The court then heard argument on—and ultimately granted—the State's consolidation request. The court observed, regardless of any evidentiary concerns, that the allegations in the two cases against Bliss were sufficiently connected to allow for consolidation under Kansas law. And though the court noted that it was "somewhat concerned about the confrontation issue," it nevertheless found that consolidation was appropriate. In particular, it noted that it was "the State's intention not to rely, at least not solely, if at all, on the testimony of [M.B.] in order to prove" the allegations related to the protective orders.

On appeal, Bliss does not contest that K.S.A. 22-3203 permitted consolidation of these two cases. Instead, he argues that the district court abused its discretion when it consolidated the cases because he did not have an adequate opportunity to cross-examine M.B. regarding the protective-order allegations. As such, he argues, the consolidation had the inevitable result of violating the Confrontation Clause of the Sixth Amendment to the United States Constitution. We disagree.

14

The district court consolidated the two cases shortly before trial—before any testimony or other evidence was offered regarding any of the charges. Though the court had found (and Bliss had conceded) that M.B. was unavailable for trial, it had not admitted any evidence regarding Bliss' violations of the protective orders. Bliss was free to object to the admission of that evidence on Confrontation Clause grounds during the trial.

A district court deciding whether to consolidate multiple cases for trial may take into consideration any evidentiary complications that might arise from the consolidation. The district court did so here. But the fact that consolidating cases might render the admission of some evidence more difficult, or require that its foundation be established through different methods, does not render consolidation unreasonable as a matter of law. We find the district court appropriately weighed these questions. It did not abuse its discretion when it consolidated the two cases for trial.

2.2.    *Bliss' confrontation right was not violated, as he had a previous opportunity to cross-examine M.B. about the protective-order questions.*

Bliss claims that even if consolidation was not improper, this court should nevertheless reverse his convictions for violation of the protective order and attempted violation of the protective order. He asserts that the evidence offered to support these convictions violated his confrontation rights under the Sixth Amendment. The State counters that Bliss forfeited his right to raise this argument, as he attempted to persuade M.B. to not appear for trial or to assert her Fifth Amendment rights, making it impossible for him to cross-examine her. It also points out that although there was no preliminary hearing in Bliss' second case, he had the opportunity to cross-examine M.B. on issues relevant to the protection-order charges in the preliminary hearing in the first case. Because we agree with this second argument—that Bliss did have an opportunity to cross-examine M.B.—we need not consider the State's forfeiture argument.

15

The Sixth Amendment guarantees a criminal defendant the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The primary purpose of this Confrontation Clause is to give a person accused of a crime "the opportunity for cross-examination to attack the credibility of the State's witnesses." *State v. Friday*, 297 Kan. 1023, Syl. ¶ 19, 306 P.3d 265 (2013). In *Crawford v. Washington*, 541 U.S. 36, 54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held that the Confrontation Clause only applies to "testimonial" statements. But the Clause prohibits admission of those testimonial statements by a witness "who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 54; see also *State v. Williams*, 306 Kan. 175, 182, 392 P.3d 1267 (2017) (analyzing *Crawford*). Whether the admission of evidence violates the Confrontation Clause is a legal question appellate courts review de novo. *Williams*, 306 Kan. 175, Syl. ¶ 1.

*Crawford* did not provide an extensive definition of what it means for a statement to be testimonial. But in later cases, the United States Supreme Court has indicated that statements are likely testimonial if the circumstances objectively indicate that the primary purpose of the questioning is to establish past events that would be relevant in a criminal prosecution. If those circumstances indicate the purpose is to help police address an ongoing emergency, however, the resulting statements are likely nontestimonial. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); see also *Michigan v. Bryant*, 562 U.S. 344, 370-71, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011) (existence of emergency is an important but not dispositive circumstance bearing on primary purpose of the statement); *Williams*, 306 Kan. at 182 (listing several factors courts may consider when evaluating whether a statement was testimonial).

Bliss argues that M.B.'s statements to Officer Avendano and Sergeant Stevens identifying his messages, calls, and meeting were testimonial. Bliss further asserts that these testimonial statements were necessary to lay the foundation to admit the pictures of

16

the messages he sent to M.B. and to show he intended to call her from the jail. And for the attempted violation charge, Bliss notes that the State relied on M.B.'s statements to prove it was her phone number Bliss tried to call from jail.

As a preliminary matter, the State argues that Bliss' continuing objection was insufficient to preserve his challenge under the Confrontation Clause for appellate review. See K.S.A. 60-404 (specific and timely objection necessary to preserve an issue for appellate review). But though other claims in Bliss' appeal raise important preservation questions, we have no such reservations here. Bliss' confrontation rights with regard to the protection-order charges were central to the parties' discussion at the hearing the day before trial. The court was aware of Bliss' concerns and granted a continuing objection on that basis. See *State v. Barber*, 302 Kan. 367, 373-74, 353 P.3d 1108 (2015). And Bliss alerted the court to the continuing objection at trial during Officer Avendano's testimony. Given this background, we are confident the district court had a meaningful opportunity to consider Bliss' arguments under the Confrontation Clause and was aware of those arguments when it allowed the officers to describe the background of M.B.'s report regarding Bliss' postarrest contacts. See *State v. Garcia-Garcia*, 309 Kan. 801, 810, 441 P.3d 52 (2019) (describing the purpose of the objection requirement). His argument based on the Confrontation Clause is preserved for our review.

But the officers' testimony regarding M.B.'s statements did not violate Bliss' confrontation rights. Though we agree with Bliss that M.B.'s statements to the officers were likely testimonial, a defendant's confrontation rights are only violated when he or she had no opportunity to meaningfully cross-examine the declarant. See *Williams*, 306 Kan. 175, Syl. ¶ 2. Bliss had this opportunity at his preliminary hearing in the first case.

The preliminary hearing in that case took place on June 6, 2017—three months after the incident giving rise to the charges stemming from the violent incident in March and two months after Bliss' efforts to contact M.B. in violation of the protective order. At

17

the hearing, the State asked M.B. about a range of issues on direct examination, including Bliss' postarrest contact with her:

"Q. [By the prosecutor:] . . . When you told police, did Christopher go to jail
and then get released, and then go back to jail?
"A. [By M.B.:] Yes.
"Q. During the time period that Christopher was out of jail, did he send you messages?
"A. Yes.
"Q. Did he apologize?
"A. Yes.
"Q. Did Christopher try to get you to allow him back into a relationship with you?
"A. Yes.
"Q. Since Christopher has been in jail the second time, has he contacted your children?
"A. Yes."

After this exchange, M.B. indicated that she would like the State to stop with this line of questioning. Bliss then had the opportunity to cross-examine M.B. regarding all topics discussed during her examination. But while he asked several questions about her description of the March argument, he asked no questions regarding his postarrest contacts.

The Sixth Amendment's Confrontation Clause guarantees a defendant the opportunity to cross-examine—and thus test the credibility of—the State's witnesses. *Friday*, 297 Kan. 1023, Syl. ¶ 19; see also *State v. Noah*, 284 Kan. 608, Syl. ¶ 5, 162 P.3d 799 (2007) (Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish"). Our examination of the record shows that Bliss had the opportunity to cross-examine M.B. regarding his unlawful postarrest contacts during the preliminary hearing. He apparently chose not to discuss this issue with M.B. at that time. But regardless of whether he availed himself of that opportunity,

18

the evidence submitted at trial about those contacts did not violate his rights under the Confrontation Clause.

3. *Bliss' other evidentiary challenges are not preserved for appellate review.*

Bliss challenges two other evidentiary rulings in his appeal: the district court's decision to admit A.B.'s out-of-court statements (during her 911 call and her discussion with Officer Helwi at the hospital) and its decision to exclude evidence of M.B.'s recantation. But the arguments Bliss raises on appeal regarding these rulings differ from the parties' discussion of those issues at trial. In other words, the district court was never given the opportunity to consider the admissibility of this evidence for the reasons Bliss now offers. These arguments are therefore not preserved for appellate review.

3.1. *Kansas law requires a timely and specific objection to a district court's ruling admitting or excluding evidence before that ruling may be reviewed on appeal.*

Kansas law requires a party to "'make a specific and timely objection at trial in order to preserve evidentiary issues for appeal.'" *State v. Brown*, 307 Kan. 641, 645, 413 P.3d 783 (2018) (quoting *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]). The purpose of this objection requirement is to allow the district court to act as an evidentiary gatekeeper at trial—to rule on the admissibility of evidence based on specific arguments raised at trial, with the context of other evidence and testimony presented. See *Garcia-Garcia*, 309 Kan. at 810. For this reason, the rule applies even when a court has previously ruled on the defendant's objection during a pretrial hearing; the evidence described there may differ from the evidence at trial. *State v. Sean*, 306 Kan. 963, 971, 399 P.3d 168 (2017). And as a corollary, a party cannot object to the admissibility or exclusion of evidence on one ground at trial and then argue a different ground on appeal, as such actions undercut the purpose of requiring a specific objection at trial. *Garcia-Garcia*, 309 Kan. at 810.

Though appellate courts often describe "preservation for appeal" as one overarching principle, our preservation rules derive from different sources. In some contexts, the need for preservation is inherent to the appellate process and defined through caselaw. See, e.g., *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (discussing general rule that constitutional claims cannot be raised for the first time on appeal). Because this type of preservation is developed by courts through our decisions, courts may also decide when it can give way to other priorities. Thus, Kansas courts have crafted limited exceptions—largely motivated by procedural fairness and judicial economy—to allow us to consider some new questions raised on appeal when our review is otherwise possible and warranted. For example, an appellate court may decide to take up an otherwise unpreserved issue if it involves a purely legal question, requiring no factual development, that fully resolves that case. Or a court may choose to consider a new argument, given a sufficient factual record, if it is necessary to protect a person's fundamental rights. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

In contrast, when a party is challenging a district court's ruling admitting or excluding evidence, the scope and manner of the preservation requirement is defined by statute. Under K.S.A. 60-404, "[a] verdict or finding shall not be set aside . . . by reason of the erroneous *admission* of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." (Emphasis added.) Because this statute contains no exception to its requirements, courts have recognized for over a decade that under "the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Appellate review of challenges to a district court's *exclusion* of evidence is governed by K.S.A. 60-405. This statute does not independently articulate a specific-objection requirement. But the Kansas Supreme Court has indicated that—consistent with

20

K.S.A. 60-404—a party seeking to admit evidence at trial must articulate a specific basis for that admission. *In re Crandall*, 308 Kan. 1526, 1543, 430 P.3d 902 (2018); see also *State v. Hillard*, 313 Kan. 830, 839, 491 P.3d 1223 (2021) (noting Kansas statutes "generally require contemporaneous objections to issues involving the erroneous admission or exclusion of evidence"). Consistent with the specific-objection requirement under K.S.A. 60-404, this practice ensures that the trial judge has a chance to fully consider whether the evidence should be admitted and to avoid any reversible error. *In re Crandall*, 308 Kan. at 1543. And K.S.A. 60-405 includes an additional requirement for challenges to a ruling excluding evidence, conditioning review on whether a party proffered the evidence that was being excluded—that is, whether "the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers." K.S.A. 60-405.

These requirements—the need to articulate a specific basis for evidence's admissibility and for a proffer describing the nature of the excluded evidence—make practical sense. For a district court to exclude evidence from trial, a party must have argued for its admission at some point before or during the trial. Just as a party must raise a sufficiently specific objection to the admission of evidence to preserve the issue for appellate review, a party who has unsuccessfully sought to introduce evidence must have sufficiently articulated the basis for its admissibility at trial. And the statute's requirement of a proffer ensures (among other things) that the district court had the opportunity to understand the nature of the omitted evidence and thus fully consider the evidence's admissibility. See *Hillard*, 313 Kan. at 839.

Since *King*, the Kansas Supreme Court has emphasized that courts cannot modify the legislature's directive in K.S.A. 60-404 regarding the admission of evidence through judicially created exceptions. See *Brown*, 307 Kan. at 645. As the court succinctly explained in *State v. Carter*, 312 Kan. 526, 535, 477 P.3d 1004 (2020): "Exceptions exist

for raising issues on appellate review without expressing an objection to the trial court, but K.S.A. 60-404 does not allow those exceptions to come into play in the context of the admissibility of evidence."

K.S.A. 60-405 similarly contains no legislative exceptions to its preservation requirement. Accord *State v. Baumgarner*, 59 Kan. App. 2d 330, 335, 481 P.3d 170 (2021) ("A reviewing appellate court must take care to avoid adding something to a statute or negating something already there."), *rev. denied* 313 Kan. 1043 (2021). But though the rationale motivating the holding in *King* and its progeny appears to apply equally to that statute, our Supreme Court's decisions render it unclear as to whether appellate courts may employ judicially created exceptions to reach arguments involving the exclusion of evidence without a specific objection and proffer.

In *Hillard*, our Supreme Court recently considered whether it should consider a district court's ruling that limited the scope of cross-examination in the absence of an objection and proffer. *Hillard* did not analyze whether the absence of a statutory exception barred review. Instead, the court acknowledged that in some instances it has considered parties' constitutional challenges—such as the Confrontation Clause challenge raised in that case—that were not properly preserved. At the same time, it emphasized that "'[t]he decision to review an unpreserved claim under an exception is a prudential one.'" 313 Kan. at 840. Thus, courts have "'no obligation'" to consider an unpreserved claim even when an exception might conceivably apply. 313 Kan. at 840. Exercising this prerogative, the *Hillard* court "decline[d]" to reach the merits of the confrontation challenge. 313 Kan. at 840.

Similarly, in *State v. Tague*, 296 Kan. 993, 298 P.3d 273 (2013), the court did not reach the merits of a district court's ruling excluding hearsay evidence—but it did so for prudential reasons, not based on the language of K.S.A. 60-405. The defendant in that case argued for the first time on appeal that the evidence should have been admitted

22

based on a hearsay exception not argued at trial. Instead of indicating that the failure to raise that argument at trial barred review, the court listed three exceptions it had previously considered in deciding whether to take up other unpreserved claims. 296 Kan. at 1000. It then explained that even when issues may implicate a defendant's "right to present his or her theory of defense," including "improperly excluding evidence," appellate review is "subject to statutory rules and caselaw interpretation of the rules of evidence and procedure." 296 Kan. at 1000. The court thus declined to review the defendant's evidentiary challenge. 296 Kan. at 1001.

Based on this precedent, it is unclear whether appellate courts have discretion to use judicially created exceptions to review otherwise unpreserved challenges to the exclusion of evidence. Despite the language of K.S.A. 60-405, the Kansas Supreme Court has continued to consider the possibility that an exception could potentially warrant review of an unpreserved challenge to the exclusion of evidence, emphasizing instead the appellate court's discretion in reviewing those questions. See *Hillard*, 313 Kan. at 840-41; *Tague*, 296 Kan. at 1000. Though this practice is arguably inconsistent with its decisions interpreting K.S.A. 60-404, we are bound by the Kansas Supreme Court's caselaw and must follow its example.

Thus, consistent with the language of K.S.A. 60-404, the failure to raise a timely and specific objection to the admission of evidence at trial acts as an absolute bar to appellate review. *Carter*, 312 Kan. at 535. Appellate courts may have discretion to consider unpreserved challenges to the district court's ruling excluding evidence, but they are not required to do so. *Hillard*, 313 Kan. at 840; *Tague*, 296 Kan. at 1000. In fact, the Kansas Supreme Court has rarely exercised that prerogative.

With these principles as our guides, we turn to Bliss' two remaining evidentiary challenges.

23

- Bliss argues that the district court erred when it *admitted* evidence of A.B.'s statements during her 911 call and at the hospital to Officer Helwi. He asserts that both statements were testimonial in nature, and the admission of these statements violated his Sixth Amendment right to confront witnesses, as A.B. was never subject to cross-examination.

- Bliss argues the district court erred when it *excluded* evidence of M.B.'s statement recanting her previous testimony. He asserts that though this recantation was hearsay, the court should have admitted it as a statement against M.B.'s interest.

The district court's rulings that Bliss now challenges arose from two of the State's pretrial motions. In one motion, the State argued that both A.B. and M.B. were unavailable witnesses and presented officers' testimony during a hearing as to the efforts the State had made to contact M.B. and her daughter. The State asserted that though A.B.'s 911 call was hearsay, it was admissible under K.S.A. 60-460(d)(1) (contemporaneous statement describing events), K.S.A. 60-460(d)(2) (excited utterance), and K.S.A. 60-460(m) (business or other official records). It likewise noted that though A.B.'s statements during her interview at the hospital were hearsay, they were admissible under K.S.A. 60-460(d)(3) (out of necessity), as A.B. had recently perceived these events, and her statements were made in good faith with no incentive to falsify or distort. And finally, the State asserted that M.B.'s statements during her interviews with police officers and her testimony at the preliminary hearing should be admitted under various hearsay exceptions.

In a second motion filed on the eve of trial, the State indicated that Bliss planned to offer M.B.'s recantation—which she provided to the Public Defender's Office—as evidence during the trial and would be discussing that recantation during opening statements. The State argued that the recantation was hearsay and did not fall within any hearsay exceptions. In turn, Bliss argued that the recantation should be admitted under

K.S.A. 60-460(d) (contemporaneous statement and necessity) and K.S.A. 60-460(l) (statements tending to show the declarant's state of mind).

The court granted both motions. Bliss now challenges the court's ruling admitting A.B.'s statements, asserting that admission of these statements violated his right under the Confrontation Clause. He also argues the court erred when it excluded M.B.'s recantation, claiming that although it may not have been admissible for the reasons he urged at trial, it should have been admitted as a statement against interest under K.S.A. 60-460(j). The State argues that these arguments are not preserved for our review because Bliss did not raise either evidentiary challenge at trial.

### 3.2. *K.S.A. 60-404 precludes our review of Bliss' challenge to the admission of A.B.'s statements.*

We first consider Bliss' challenge to the district court's admission of A.B.'s statements—her 911 call and her conversation with Officer Helwi at the hospital when M.B. was being treated for her injuries.

At Bliss' request, the district court considered the State's motion concerning the admissibility of A.B.'s and M.B.'s statements to law enforcement during two hearings in the days leading up to trial. These were the same hearings when the parties discussed the State's consolidation request (addressed in the previous section). The primary evidentiary focus of the hearings was the State's assertion that A.B. and M.B. were unavailable witnesses, while the predominate legal question the parties discussed was the effect of consolidation on Bliss' right to cross-examine M.B. as to the protection-order charges.

During these two pretrial hearings, the State offered testimony of various witnesses regarding M.B.'s and A.B.'s availability. At the second hearing, after these witnesses testified, the court turned to Bliss and asked whether he would be presenting any further evidence. His counsel responded:

"No, I think I can do it. Okay. So my concern, Judge, is that legally I don't think we have an argument to deny that [M.B. is] unavailable. My concern, however, still is consolidating the cases because of the foundational issues and hearsay issues having to do with the e-mails, the phone calls, the PFA stuff."

The attorney then went on to argue at length about the issue we addressed in the previous section—whether consolidation of the cases would result in a violation of Bliss' confrontation right in the second case.

The district court then asked Bliss' attorney to clarify the arguments concerning the State's evidentiary motion, stating the attorney had "talked about objections or no objections to availability, then . . . talked about consolidation." The court continued, "I want to make certain that I understand what your arguments are, which [motion] it applies to." The following exchange then took place:

"[Defense attorney]: I just—I don't believe as an officer of the court I have a legal argument against unavailability. I think the State has shown that through Officer Call. I think it is Investigator Call.

"THE COURT: Yes.

"[Defense attorney]: My problem is having [M.B.] unavailable and consolidating these cases means that I can't question her about all these alleged contacts that have never been addressed, the PFA stuff that has never been addressed. The only times—

"THE COURT: With regard to the second case, not the first?

"[Defense attorney]: Right."

Shortly thereafter, the court again sought clarification that the "defense is questioning about the first case but not the second? If we include the second, then it creates some unfairness towards him?" Bliss' attorney responded, "Yes, sir."

26

Based on this exchange and the parties' arguments, the court noted that Bliss and the State agreed that M.B. and A.B. were unavailable to testify. The State then explained the nature of the evidence it was seeking to admit and exclude and the various hearsay exceptions on which it relied. Bliss' argument related solely to the effect of the consolidation on the second case relating to the protection orders; he did not challenge the State's hearsay arguments or offer any additional hearsay exceptions that would allow for the admission of M.B.'s recantation. Nor did he argue that admission of any of the other statements by M.B. or A.B. would violate his right under the Confrontation Clause.

After taking a short recess to review K.S.A. 60-460 and the State's arguments in its motions, the court granted the State's evidentiary requests. The court indicated it would admit evidence relating to A.B.'s 911 call and her statements to Officer Helwi; it also would admit M.B.'s statements to various law enforcement officials and her preliminary hearing testimony.

Once the court issued its ruling, the hearing turned to a number of other pending pretrial matters. The court granted the State's consolidation request, and then the court and parties engaged in a lengthy discussion as to whether the State should be permitted to amend various allegations in its complaint. After a recess to allow the parties to review the State's proposed amendments, the parties discussed this matter further.

Once this discussion concluded, the court asked the parties if there were "any other issues" that needed to be addressed. Bliss' attorney responded: "I don't know if I put my objection on the record so I just want to do that now, the objection to finding [A.B.] unavailable since she was never subject to cross-examination by the defense so I just want to make sure that's on the record." The court responded that it had based its unavailability ruling on the evidence presented during the hearing and overruled the objection. Bliss did not ask for any clarification on this ruling and made no attempt to address the matter further, and the hearing ended.

27

On appeal, Bliss argues that the admission of A.B.'s statements during the 911 call and at the hospital violated his Sixth Amendment right to confront witnesses. He argues that these statements were testimonial in nature and points out that A.B. was never subject to cross-examination. The fundamental problem with this argument is that Bliss never gave the district court the opportunity to consider it.

Bliss argues that his attorney's statements at the close of the pretrial hearing were sufficient to alert the district court to the confrontation challenge he now raises on appeal. He points out that his counsel referenced the fact that A.B. was "never subject to cross-examination," which is the central focus of the Sixth Amendment's Confrontation Clause. We do not find the context or the content of that comment to be sufficient to alert the district court to this concern.

From a contextual standpoint, we note that the focus of the parties' discussion during the pretrial hearing was on M.B.'s statements to law enforcement—particularly her statements regarding Bliss' conduct subject to the protection orders. Given this focus, we find that Bliss' counsel offered her statement at the end of the hearing merely to emphasize Bliss' objection to A.B. also being declared an unavailable witness. The attorney did not seek any additional findings by the court, but merely indicated she was making sure the objection was "on the record."

The content of Bliss' objection also indicates he was objecting to the unavailability finding, not raising a different concern under the Confrontation Clause. Notably, Bliss' attorney did not ask the district court to find that A.B.'s statements were testimonial—the threshold finding for confrontation challenges. See *Crawford*, 541 U.S. at 53-54; *Williams*, 306 Kan. at 182. Nor did Bliss offer any argument as to the circumstances in which A.B. offered her statements, to determine whether their primary aim was to establish past events or help address an emergent need. See *Davis*, 547 U.S. at 822.

28

Instead, Bliss' attorney only stated Bliss was objecting to the court's "finding [A.B.] unavailable since she was never subject to cross-examination by the defense"—a necessary consequence of her unavailability.

This case illustrates the need, as our Supreme Court has emphasized, to articulate a specific objection at trial—particularly in the context of a confrontation or hearsay question. The court discussed this point at length in *State v. McCaslin*, 291 Kan. 697, 708-09, 245 P.3d 1030 (2011), *overruled on other grounds by State v. Astorga*, 299 Kan. 395, 402, 324 P.3d 1046 (2014):

> "[T]here may be some overlap of objections based upon hearsay and confrontation. Indeed, it might be argued that all statements violating the Confrontation Clause are also necessarily hearsay. But . . . their overlap does not satisfy the specificity requirement of the objection. . . .
>
> > . . . .
>
> > "The specificity requirement is particularly important when a Confrontation Clause objection is warranted because the trial court would then be on notice of its obligation to follow the multistep analysis detailed in *Crawford*, and to give the prosecutor the opportunity to meet *Crawford*'s requirements. See 541 U.S. at 68 (whether statement is testimonial and, if so, whether witness is unavailable and defendant had prior opportunity to cross-examine). Similarly, when a hearsay objection is warranted, the evidence proponent could argue that the statement is not hearsay because it is not being 'offered to prove the truth of the matter stated.' See K.S.A. 60-460. Or, if the statement is hearsay, the proponent could argue that one or more of the numerous exceptions applies. See K.S.A. 60-460(a)-(ee). But if a different ground had been raised by the objecting party and analyzed by the trial court, the appellate court obviously has no trial court analysis in the record to review in its determination of the newly alleged hearsay or confrontation error."

Applying these principles here, we conclude that Bliss' ambiguous objection at the end of the pretrial hearing—an objection made simply for "the record"—was not sufficiently specific to alert the district court to whether he was raising a challenge to

A.B.'s unavailability, or based on a hearsay analysis, or under the Confrontation Clause. We find Bliss' failure to request any factual findings necessary to determine whether A.B.'s statements were testimonial to be particularly telling; the Kansas Supreme Court has explained that without these findings, courts are "handcuffed" in our confrontation analysis. *State v. Jones*, 295 Kan. 1050, 1057, 288 P.3d 140 (2012).

In sum, Bliss did not raise a sufficiently specific objection before the district court to allow it to "consider as fully as possible whether the evidence should be admitted" in light of his Confrontation Clause challenge and "therefore reduce the chances of reversible error." *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009). Thus, this question was not preserved for appellate review.

Bliss argues that even if his objection at trial did not alert the district court to his Confrontation Clause claim—as we conclude here—this court should nevertheless analyze this question to protect his fundamental rights under the Sixth Amendment. But as we have previously indicated, appellate courts may not use judicially created preservation exceptions to consider unpreserved questions involving the admission of evidence. See K.S.A. 60-404; *Carter*, 312 Kan. at 535. The Kansas Supreme Court has consistently indicated that even confrontation challenges are subject to this procedural requirement. *McCaslin*, 291 Kan. at 709; *Richmond*, 289 Kan. at 437.

Bliss' challenges to the admission of A.B.'s statements under the Confrontation Clause were not preserved for appellate review.

### 3.3. *Bliss' challenges to the district court's exclusion of M.B.'s recantation are not preserved for appeal.*

Bliss also argues that the district court erred when it ruled, based on the State's second evidentiary motion, that M.B.'s recantation was inadmissible.

30

This second motion, filed the evening before trial, indicated that the State had learned that Bliss would be seeking to introduce M.B.'s statement recanting her previous testimony as evidence at trial and also would be discussing this recantation during his opening statement. The State argued that M.B.'s recantation was hearsay, and Bliss had not shown that this recantation was admissible as an exception to the hearsay rule. In response, Bliss argued that the recantation should be admitted out of necessity under K.S.A. 60-460(d)(3) or as a statement regarding M.B.'s physical or mental condition under K.S.A. 60-460(l).

The district court ruled that neither of the hearsay exceptions Bliss argued applied to the recantation. The court therefore granted the State's motion and ruled that Bliss could not introduce evidence of M.B.'s statement at trial. At the same time, the court indicated that it would reconsider its ruling if M.B. were to show up to testify.

Neither party provided the actual recantation for the court's review at the pretrial hearing. Instead, the parties discussed M.B.'s written statement in general terms. The State explained that it was "a written statement that [M.B.] made to the Public Defenders' investigator" sometime after the preliminary hearing. The State indicated the written statement was given in "early August 2017" and was made in Spanish and translated by a court reporter. But during trial, Bliss proffered M.B.'s written recantation and its translation to be included in the appellate record.

In his appeal, Bliss has abandoned his previous arguments regarding the admissibility of M.B.'s recantation under K.S.A. 60-460(d)(3) and (l). He argues instead that the district court should have admitted the recantation as a statement against interest under K.S.A. 60-460(j).

Kansas courts have long recognized that a party may not seek to admit evidence on one ground at trial and then offer a different ground for its admissibility on appeal.

31

See *Tague*, 296 Kan. at 999-1000; *Richmond*, 289 Kan. at 428; *State v. Engelhardt*, 280 Kan. 113, 127, 119 P.3d 1148 (2005); see also *State v. Patchett*, 203 Kan. 642, 645, 455 P.2d 580 (1969) ("The specification of an objection to evidence on one ground waives or estops the objector from making an objection on any other ground."). The practice of raising new arguments on appeal thwarts the purpose of the specific-objection requirement and deprives the district court of the ability to fully analyze the admissibility of the evidence in question. It also deprives the reviewing court of the district court's evaluation of that question. Because Bliss never argued K.S.A. 60-460(j) as a basis for admitting M.B.'s recantation, the district court had no opportunity to issue a ruling on that question that we may review. Thus, the issue has not been preserved for appeal.

Bliss acknowledges in his brief that he never argued K.S.A. 60-460(j) as a basis to admit M.B.'s written statement at trial. But he asserts that the applicability of that section should have been so apparent that the district court should have raised the issue of its own initiative. And he now asks us to reach the merits of this argument, arguing that it involves a legal question (the hearsay statute) and implicates his fundamental right to present his theory of the defense. There are several reasons why we do not find these arguments persuasive.

*First*, the fact that an evidentiary determination may ultimately turn on a legal question—such as the applicability of an exception under K.S.A. 60-460—does not mean it is appropriate for consideration in the first instance on appeal. Instead, courts have recognized that, in some instances, *purely legal questions* may be raised for the first time on appeal. In such cases—when "'the newly asserted theory involves *only* a question of law arising on proved or admitted facts'"—appellate review will be less hindered without a trial record. (Emphasis added.) *Richmond*, 289 Kan. at 429.

32

We do not believe that the admissibility of evidence under K.S.A. 60-460(j) involves this type of legal analysis. Under this exception, hearsay evidence may be admitted if the trial judge finds the out-of-court statement was

> "at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest or so far subjected the declarant to civil or criminal liability or so far rendered invalid a claim by the declarant against another or created such risk of making the declarant an object of hatred, ridicule or social disapproval in the community that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." K.S.A. 2020 Supp. 60-460(j).

K.S.A. 60-460(j) thus requires the district court to make a number of factual findings regarding the context of the statement, its impact, and the declarant's interests and motivations. These findings can rarely be made on a written record. And the district court had no opportunity to make those findings here.

*Second*, courts have traditionally limited their review of even purely legal questions raised for the first time on appeal to instances where the legal issue is "'finally determinative of the case.'" 289 Kan. at 429. Evidentiary allegations rarely meet this standard, as evidentiary errors are subject to a harmlessness inquiry. See K.S.A. 2020 Supp. 60-261 (inconsistent with substantial justice); *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (conclusion beyond reasonable doubt that the error had little, if any, likelihood of having changed the results of the trial). The Kansas Supreme Court has expressed skepticism as to whether these kinds of questions are sufficiently determinative to warrant consideration for the first time on appeal. See *Richmond*, 289 Kan. at 429.

*Third*, while it is true that a defendant has the right to present his or her defense theory at trial, virtually all adverse evidentiary rulings may be phrased as implicating this consideration. See *State v. Love*, 305 Kan. 716, Syl. ¶ 5, 387 P.3d 820 (2017). And courts

have long recognized that this right is not absolute; rather, it is subject to Kansas statutes and caselaw interpreting the rules of evidence and procedure. 305 Kan. 716, Syl. ¶ 5. Kansas courts have held that when someone fails to comply with the specific-objection requirement by offering a new basis for admitting evidence on appeal, consideration of that new argument is not "necessary to serve the ends of justice or to prevent the denial of a fundamental right." *Tague*, 296 Kan. at 1001. To hold otherwise would allow the judicially created exceptions to swallow our rules requiring preservation.

And *fourth*, we are not swayed by Bliss' argument that the district court should have independently considered whether K.S.A. 60-460(j) applied in this case. When the State sought to exclude evidence of M.B.'s recantation before the start of trial, M.B. had not sought to invoke her Fifth Amendment rights. Neither party indicated that M.B.'s recantation was motivated by any concerns for providing a false report to the police; Bliss, who possessed the written recantation and translation of that statement, could have provided this information if he thought it was relevant to the court's analysis. And no one—not Bliss, not the State, not the court—mentioned the possibility that K.S.A. 60-460(j) might apply, belying Bliss' assertion on appeal.

For all of these reasons, we find Bliss' argument that M.B.'s recantation should have been admitted under K.S.A. 60-460(j) was not preserved for our review, and we decline to consider this new argument for the first time on appeal.

4. *The court did not err when it allowed M.B. to invoke her Fifth Amendment rights outside the presence of the jury.*

Bliss next claims the district court violated his constitutional right to present a defense when it allowed M.B. to assert her Fifth Amendment right against self-incrimination outside the presence of the jury.

34

As we have previously discussed in this opinion, the day before the trial began, the district court found—based on the evidence presented at two pretrial hearings and the parties' subsequent agreement—that M.B. was an unavailable witness. And the next day, before the parties' opening statements, the court ruled that M.B.'s recantation was inadmissible, though the court indicated it might be willing to reconsider its ruling if M.B. were to appear and testify as a witness.

Later that day, as one of the State's witnesses was testifying, M.B. came into the courtroom. At M.B.'s request, the court appointed an attorney to represent her. Then, with the advice of counsel and the assistance of an interpreter, M.B. informed the court she wished to assert her Fifth Amendment right against self-incrimination. (On appeal, the parties indicate, largely based on M.B.'s recantation and her subsequent statements at sentencing, that M.B. believed her testimony would lead to her being prosecuted for making a false police report.) Bliss objected to the State's request to have M.B. testify outside the jury's presence, arguing the jury should know about M.B.'s decision to invoke the Fifth Amendment. Relying on *State v. Crumm*, 232 Kan. 254, 654 P.2d 417 (1982), the court overruled Bliss' objection. M.B. subsequently testified—and invoked that right—while the jury was out of the courtroom.

The Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights grant a criminal defendant the right to present a witness to establish a defense. *State v. Hensley*, 298 Kan. 422, 433, 313 P.3d 814 (2013); *State v. Suter*, 296 Kan. 137, Syl. ¶ 1, 290 P.3d 620 (2012). This right to present testimony (often called compulsory process) is fundamental to a fair trial, but it is not absolute. Rather, it may in some circumstances give way to other interests. 296 Kan. 137, Syl. ¶ 1; *State v. Delacruz*, 307 Kan. 523, 533, 411 P.3d 1207 (2018).

One such interest is the Fifth Amendment, which protects a person from testifying if doing so would expose the person to criminal liability. *State v. George*, 311 Kan. 693,

35

707-08, 466 P.3d 469 (2020). This protection, which is also included in section 10 of our Kansas Constitution Bill of Rights, may be invoked when a response would create a reasonable apprehension of prosecution and applies not only to a witness' inculpatory responses but also to answers that would lead to incriminating evidence. *Delacruz*, 307 Kan. at 534 (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 [1951]); *State v. Durrant*, 244 Kan. 522, Syl. ¶ 6, 769 P.2d 1174 (1989).

The Kansas Supreme Court addressed these conflicting interests in *Crumm*. There, James Crumm killed his stepbrother upon the urging of his mother. At his first-degree murder trial, Crumm called his mother as a witness to support an insanity defense. Her attorney informed the district court that she would not testify about any events leading up to the murder, and the court ordered the parties not to ask her any questions that would require her to invoke the Fifth Amendment.

The Kansas Supreme Court approved of the district court's handling of the situation. Citing to cases from other states, the court explained that a party may not knowingly call a witness who intends to invoke the Fifth Amendment's protection against self-incrimination for the purpose of having the jury witness that invocation. *Crumm*, 232 Kan. at 257. The court reasoned that a jury might give undue weight to a witness exercising his or her constitutional right, interpreting it as "'high courtroom drama of probative significance.'" 232 Kan. at 260. But in reality "'[b]ecause the impact of a witness's refusal to testify outweighs its probative value,'" a jury may not draw any inferences from the decision to exercise the Fifth Amendment right. 232 Kan. at 260. Thus, calling a witness for the sole purpose of invoking this privilege does not comport with the purpose of compulsory process—to have a witness provide testimony. 232 Kan. at 258-60; see also *State v. Lashley*, 233 Kan. 620, 626, 664 P.2d 1358 (1983) (as jury may give undue weight to claim of privilege, claims of privilege should be determined outside the jury's presence).

36

Bliss questions *Crumm*'s rationale and argues this court should weigh the protections of section 10 of the Kansas Constitution Bill of Rights differently from the protections under the Fifth and Sixth Amendments. But the Kansas Supreme Court has consistently held that these provisions provide "the same protection." *George*, 311 Kan. at 707-08. This court is duty-bound to follow Kansas Supreme Court precedent. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Bliss does not argue that this state's high court has altered its position, nor has he explained why the history or language of section 10 indicates it should be analyzed independently. Accord *State v. Boysaw*, 309 Kan. 526, 537-38, 439 P.3d 909 (2019) (noting that a litigant arguing for an independent reading of the Kansas Constitution from its federal counterpart must articulate why the history and text of the two documents lead to different protections). Thus, *Crumm* and its progeny control our analysis.

Bliss also argues that the district court overread *Crumm*'s holding. He notes that the analysis and the existence of a privilege—including the constitutional privilege against self-incrimination—are fact-dependent. Thus, he argues, the court should have required M.B. to testify in the jury's presence and merely exclude questions that would have broached her Fifth Amendment privilege.

Practically speaking, Bliss' allegations are not borne out by the record. In fact, when M.B. testified, she exercised her privilege against self-incrimination by declining to answer every question asked during direct and cross-examination. Neither party asserts that she was not entitled to do so; all questions asked of M.B.—about contacting police in March and April 2017—concerned topics that implicated her Fifth Amendment right. And nothing prevented Bliss from calling M.B. to testify before the jury and asking her questions that did not implicate that right. But he did not do so.

Our review of the record shows that Bliss wished to have M.B. invoke her privilege against self-incrimination so the jury could infer her motivation for not

37

testifying—that is, that she "must have something to hide." *State v. Turner*, 300 Kan. 662, 680, 333 P.3d 155 (2014). This is the very inference decried by the Kansas Supreme Court in *Crumm* and its later cases. The district court did not err when it allowed M.B. to invoke her constitutional right against self-incrimination outside the presence of the jury.

5. *Bliss has not shown that cumulative error deprived him of a fair trial.*

For his final argument challenging his convictions, Bliss asserts that even if his arguments do not individually require reversal, the combined effect of the district court's rulings deprived him of a fair trial. While we acknowledge that the district court in this case faced several interesting legal questions, we have found only one error—the improper conviction and sentence for the alternative count of aggravated kidnapping. As we have indicated, the proper remedy for that error is to reverse that conviction and vacate his sentence for one of the aggravated-kidnapping offenses. That error does not cause us to lose confidence in the court's other rulings. See *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018) (claims of cumulative error involve an assessment of "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence"). Bliss' claim for cumulative error is without merit.

To summarize our conclusions regarding Bliss' trial and convictions, we reverse Bliss' conviction and vacate his sentence for aggravated kidnapping under Count 4 in the State's complaint as that offense was charged in the alternative of the other aggravated-kidnapping offense. Because Bliss has not otherwise apprised us of any error leading up to or during his trial, we affirm Bliss' remaining convictions for aggravated kidnapping, aggravated sexual battery, battery, violation of a protective order, and attempted violation of a protective order.

In light of his conviction for aggravated kidnapping and his criminal history score, Bliss faced a presumptive sentence of at least 203 to 226 months in prison under the Kansas Sentencing Guidelines. Before sentencing, Bliss moved for a dispositional departure—seeking probation—or, in the alternative, a durational departure to reduce the term of his prison sentence. Bliss argued that his lack of violent criminal history warranted a departure. And M.B. also appeared and stringently implored the court to impose a more lenient sentence so Bliss could return home to M.B. and their children. The parties presented testimony on these sentencing requests over the course of three hearings.

After hearing this testimony and the parties' arguments, the court indicated it was "concerned" about the change in M.B.'s testimony between preliminary hearing and sentencing, noting the State had questioned whether M.B.'s current request for leniency had been influenced by Bliss or his family members. At the same time, the court acknowledged M.B.'s desire for Bliss to return home. The evidence presented at sentencing showed that M.B. did not speak English and was without economic support and was living in a homeless shelter with her baby, while A.B. was living with her grandmother. M.B. did not deny that the couple had argued or that the argument had gotten "out of hand," but she nevertheless asked for a more lenient sentence.

After considering this evidence, as well as additional statements by M.B. and Bliss, the court denied Bliss' request for probation. But it granted Bliss' request for a durational departure and imposed a controlling 84-month prison sentence, citing M.B.'s request for leniency and the fact that—other than the current cases—Bliss did not have a history of committing violent crimes.

The State appeals this sentence. It argues that the district court erred when it granted the durational departure, asserting that neither explanation given for the court's decision was a substantial or compelling reason that can warrant a departure under Kansas law. We disagree.

A district court may deviate from the presumptive sentence imposed by the Kansas Sentencing Guidelines when there are substantial and compelling reasons that warrant a departure. K.S.A. 2020 Supp. 21-6815(a). Broadly speaking, a reason offered to justify a departure sentence may be "substantial" if it is "real, not imagined, and of substance, not ephemeral." *State v. Hines*, 296 Kan. 608, Syl. ¶ 5, 294 P.3d 270 (2013). A reason is compelling if it "forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose." 296 Kan. 608, Syl. ¶ 5.

The Sentencing Guidelines provide a nonexclusive list of potential mitigating factors that might justify a departure sentence. See K.S.A. 2020 Supp. 21-6815(c)(1). Courts may also consider factors not included in the statutory list as long as the legislature has not "already taken the factor into account" through "the sentencing grid." *State v. Montgomery*, 314 Kan. ___, ___ P.3d ___, 2021 WL 3824858, Syl. ¶ 1 (2021). In some instances, a single factor that is substantial and compelling may justify a departure. *State v. Brown*, 305 Kan. 674, 694, 387 P.3d 835 (2017). Or the culmination of several sufficiently substantial factors may compel a court to depart, even if none of the factors would independently warrant a departure. 305 Kan. at 694. In either case, the inquiry remains the same—whether the reason or reasons provided are substantial and sufficiently compelling to warrant a departure from the Sentencing Guidelines.

Appellate review of a district court's decision to impose a departure sentence follows a three-step framework. An appellate court first determines whether the ground given for the departure can, as a matter of law, be considered as a mitigating factor under K.S.A. 21-6815. If it can, the appellate court next considers whether the cited ground is

40

supported by the record. Finally, the appellate court considers the reasonableness of the district court's assessment that this ground, individually or when combined with other circumstances considered, constituted a substantial and compelling reason to depart from the presumptive sentence under the Kansas Sentencing Guidelines. *State v. Morley*, 312 Kan. 702, 711, 479 P.3d 928 (2021).

The first of these analytical steps presents an issue of law over which appellate courts' review is plenary. Under the second step, we must determine whether the district court's findings are supported by substantial competent evidence in the record. And we review the district court's analysis under the third step for an abuse of discretion. 312 Kan. at 711.

Our review shows that the district court did not err when it concluded the combination of M.B.'s request for leniency and Bliss' lack of violent criminal history warranted a durational departure sentence. We are fully cognizant—as was the district court in this case—of the dangerous and often complicated dynamics in relationships involving domestic abuse. The facts of this case illustrate this reality. M.B.'s initial reports to law enforcement and testimony at the preliminary hearing painted one picture of Bliss' behavior. But her later actions, seeking to recant her previous statements and requesting that Bliss be granted probation for his offenses, at times downplayed Bliss' conduct in favor of reuniting her family. Our review of the record shows that the district court was carefully attempting to sift through M.B.'s conflicting statements, as well as the various people who may have influenced her behavior. The court explained that—having observed M.B. throughout the case—it found her earlier statements more credible regarding the nature of Bliss' conduct. But it also noted that M.B. was "strident" in her request for leniency, particularly given her reliance on Bliss for support.

The State attempts to sidestep these weighty considerations, arguing that—under the first step in our analysis—the district court erred as a matter of law when it

considered M.B.'s request for leniency as a potential reason to depart. The State argues, based on the Kansas Supreme Court's decision in *Hines*, that a victim's request for leniency should never serve as a substantial or compelling reason to depart from a presumptive sentence in a case involving domestic violence. We do not read *Hines* so broadly.

In that case, the defendant pleaded guilty to attempted second-degree murder and aggravated battery after he strangled and cut his wife's throat. At sentencing, his wife asked the court to impose probation, stating that her husband had not really been trying to harm her and that he was a loving father and husband. The district court imposed a durational departure sentence based on the victim's request for leniency. On appeal, the Kansas Supreme Court affirmed the Court of Appeals' reversal. 296 Kan. at 624. The Supreme Court explained that given the facts of the case, there was little to support the wife's assertions, so the district court abused its discretion. 296 Kan. at 622-23. In other words, the *Hines* court decided that the district court's findings were not supported by evidence in the record—the second step in our appellate analysis. See *Morley*, 312 Kan. at 711.

At the same time, however, the *Hines* court rejected the State's argument in that case that a victim's request for leniency can never be a substantial or compelling reason warranting a departure. 296 Kan. at 619. Instead, "if a victim's request for leniency is substantial, then the request for leniency can, in and of itself, justify a sentencing court's decision to impose a departure sentence." 296 Kan. at 619.

Our review of the record in this case shows the district court here conducted the careful analysis the Kansas Supreme Court described in *Hines*. Though the court acknowledged that M.B.'s statements at sentencing likely downplayed the harmful nature of Bliss' conduct, that did not render M.B.'s request for leniency entirely unreasonable. Instead, as both M.B. and Bliss pointed out at sentencing, M.B. relied on Bliss to provide

for her and her children—a very real, or "substantial," consideration. The court then weighed this factor, along with Bliss' lack of other violent history. Though the court found these circumstances did not warrant probation (as advocated by M.B.), it found the combination sufficiently compelling to impose a durational departure.

The State also asserts that the absence of violent criminal convictions can never justify a departure because a defendant's criminal history score already accounts for prior convictions. It is true that a district court may not justify a departure solely based on a criminal history score or factors the Sentencing Guidelines already have taken into account, such as "the difference in character between a defendant's past offenses and the present offense." *Montgomery*, 2021 WL 3824858, Syl. ¶ 2. But a court may consider a defendant's lack of violent history, in conjunction with other potentially mitigating factors, to determine whether the reasons given "'when considered as a whole, constitute substantial and compelling circumstances justifying departure.'" 2021 WL 3824858, at *7 (quoting *State v. Favela*, 259 Kan. 215, 239, 911 P.2d 792 [1996]). That is precisely what the district court did here.

This was an exceptionally difficult case. The district court did not err when it considered M.B.'s request for leniency, particularly when viewed against the backdrop of Bliss' lack of violent criminal history, as a mitigating factor that warranted a departure sentence. The district court's findings are supported by evidence in the record. And given the careful manner in which the district court approached the parties' concerns at sentencing—shown by, among other things, the lengthy testimony provided by multiple witnesses on those questions—we do not find the court's decision to impose a departure sentence was inherently unreasonable. The district court did not abuse its discretion when it imposed a controlling sentence of 84 months' imprisonment.

For the reasons we have discussed in this opinion, we reverse one of Bliss' convictions for aggravated kidnapping and vacate the sentence for that conviction. We affirm Bliss' other convictions and sentence.

Convictions affirmed in part and reversed in part, sentence vacated in part, and case remanded with directions.